RAFFI A. NAHABEDIAN, ESQ.
Nevada Bar No. 9347
**LAW OFFICE OF RAFFI A. NAHABEDIAN**
7408 Doe Avenue
Las Vegas, Nevada 89117
Telephone: (702) 379-9995
Facsimile: (702) 222-1496
E-Mail: raffi@nahabedianlaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHAWN PADILLA, an individual, | CASE NO. |
| Plaintiffs, | DEPT NO. |
| vs. | |
| NEVADA GAMING CONTROL BOARD; MGM GRAND HOTEL, LLC; DOES I through X, and ROES I through X | **COMPLAINT FOR DAMAGES** |
| | **Demand for Jury Trial** |
| Defendants. | |

COMES NOW Shawn Padilla, an individual (hereinafter "Mr. Padilla" or "Plaintiff"), by and through his counsel of record, Raffi A. Nahabedian, Esq., and as and for his Complaint against Defendants and each of them, allege as follows:

### INTRODUCTION

1. This civil rights and state tort action seeks general and compensatory damages, as well as other forms of allowable damages from Defendants for violating various rights guaranteed under the United States Constitution and Nevada State laws in connection with the injurious, unlawful and unconstitutional actions of and by the Defendants on December 25, 2020.

## JURISDICTION AND VENUE

2. This civil action is brought for the redress of alleged deprivations of Plaintiff's Constitutional rights protected by 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and under the laws of the State of Nevada. Jurisdiction is based on 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Plaintiff's Nevada State law claims under 28 U.S.C. § 1367.

3. Venue in this District is proper because all facts please and all acts and omissions complained of herein giving rise to the Complaint occurred in Clark County, Nevada, in the District of Nevada.

## PARTIES TO THIS LAWSUIT

4. At all times relevant herein Plaintiff, SHAWN PADILLA (hereinafter "Mr. Padilla" of "Plaintiff"), was and is a resident of Hawai'i, was over 18 years of age, and was subjected to the injurious, unlawful and un-Constitutional actions of the Defendants as described herein during and while he was present in Clark County, Nevada.

5. At all times relevant herein Defendant, NEVADA GAMING CONTROL BOARD (hereinafter "Defendant NGCB"), was and is a political subdivision of the State of Nevada and Defendant NGCB is an enforcement agency within Clark County, Nevada.

6. Defendant NGCB is responsible for the hiring, training, control and supervision of all its officers and agents, as well as the implementation and maintenance of its official and unofficial policies and procedures.

7. At all times relevant herein Defendant NGCB summoned and deployed officers or agents to a property commonly known as the MGM Grand located at 3799 So. Las Vegas Blvd., Las Vegas, NV 89109, for an alleged claim or incident involving a theft of gaming chip on the subject property. In responding, the officers or agents of Defendant NGCB subjected Plaintiff to injurious, unlawful and un-Constitutional actions as described herein. These Defendant NGCD officers or agents will be and are DOE Defendants and when their identities are ascertained they will be named as a defendant being sued in their individual capacity.

8. At all times relevant herein Defendant, MGM GRAND HOTEL, LLC, doing business as or commonly known as MGM Grand located at 3799 So. Las Vegas Blvd., Las Vegas, NV 89109 (hereinafter "Defendant MGM"), was and is an entity organized and existing under the laws of Nevada and doing business in Clark County, Nevada.

9. Defendant MGM is responsible for the hiring, training, control and supervision of all its officers and agents, as well as the implementation and maintenance of its official and unofficial policies and procedures.

10. At all times relevant herein Defendant MGM summoned and deployed officers or agents to the hotel room of Plaintiff for an alleged claim or incident involving the theft of a gaming chip on the subject property. In responding and securing Plaintiff, these officers or agents of Defendant MGM subjected Plaintiff to unlawful and harmful actions, as well as un-Constitutional actions as described herein. These Defendant MGM officers or agents will be and are DOE Defendants and when their identities are ascertained they will be named as a defendant being sued in their individual capacity.

11. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant Does 1 through 10, inclusive, and Defendants Roe 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sue said Does and Roes as being in some way responsible for Plaintiff's damages and injuries resulting from the subject incident and, thus, liable as alleged herein. Plaintiff will request leave of this Honorable Court to amend his Complaint when such names and identities become known.

12. At all times relevant hereto, Defendant NGCB, including Doe and Roe Defendants, were the actual, implied, de facto and/or de jure agents, servants, employees, employers, alter-egos, partners, co-owners and/or joint venturers of each other and of their co-Defendants and were acting within the color, purpose, and scope of their employment, agency, ownership, and/or joint ventures and by reason of such relationships these individual Defendants, and each of them, are jointly and severally responsible and liable for the acts or omissions of the other individual Defendants herein.

13. At all times relevant hereto, Defendant MGM, including Doe and Roe Defendants, were the actual, implied, de facto and/or de jure agents, servants, employees, employers, alter-egos, partners, co-owners and/or joint venturers of each other and of their co-Defendants and were acting within the color, purpose, and scope of their employment, agency, ownership, and/or joint ventures and by reason of such relationships these individual Defendants, and each of them, are jointly and severally responsible and liable for the acts or omissions of the other individual Defendants herein.

## ALLEGATIONS COMMON TO ALL CLAIMS

14. Paragraphs 1 through 13 are hereby specifically included and incorporated as though fully set forth herein.

15. Plaintiff, Mr. Padilla, and his family (wife, child and aunt) were hotel guests staying at the property commonly known as the MGM Grand, Defendant MGM on or about December 24, 2020.

16. Following their check-in and getting situated in their hotel room, Mr. Padilla went to the casino floor to play craps. While playing craps Mr. Padilla did not do anything improper or illegal, and at no time during his craps play and presence at the craps table did security or any other hotel personnel confront Mr. Padilla regarding any impropriety or malfeasance relating to his craps play or activities.

17. Following several hours or more of playing craps, Mr. Padilla decided to return to his hotel room where his wife was sleeping in the one-bedroom suite and his son and aunt were sleeping in guest area.

18. Sometime in the early morning, at or around 4 a.m., PST, loud door pounding/knocks resonated through the hotel room startling and waking up Mr. Padilla and his family, forcing Mr. Padilla to answer the door to ascertain who it was and why they were pounding on his hotel room door.

19. Upon opening the door, Mr. Padilla confronted by six (6) Defendant MGM security officers or agents (personnel) who demanded that he identify himself and to get properly

dressed so he could be escorted to the security office to meet with Nevada Gaming Control Board officers or agents to discuss an issue that took place at the craps table that Mr. Padilla was playing craps on the casino floor.

20. Mr. Padilla and his family were in disbelief and traumatized at the situation and began to cry as they feared for his safety and welfare, and were panicked by the disturbing allegation of Mr. Padilla taking anything.

21. Unfortunately for Mr. Padilla, the six (6) security officers or agents proceeded to walk Mr. Padilla through the middle of the casino floor as he was exposed to and displayed to all those in the casino which, undeniably, rendered Mr. Padilla as a person or suspect who committed a wrong or engaged in an impropriety. Mr. Padilla was humiliated and disgraced.

22. Following the walk-of-shame through the casino, the six (6) security officers or agents took Mr. Padilla inside an area he believed was Defendant MGM's security office with, what appeared to be, holding cells with cameras and steel benches.

23. After being confined in the holding cell for approximately ten (10) minutes, two men entered the room, a Caucasian man and an African-American man, wherein the Caucasian man identified himself as being from Nevada Gaming Control Board (Defendant NGCB) and ordered Mr. Padilla to stand up and to put his arms around his back, at such time Mr. Padilla was grabbed, aggressively handcuffed and read his Miranda rights.

24. Shocked and bewildered as Mr. Padilla did not expect to be handcuffed or read his rights, Mr. Padilla immediately asked what was going on and why he was being handcuffed, to which the Caucasian officer or agent from Defendant NGCB stated that he "stole a $25 casino chip while playing craps" and, critically, the Caucasian officer or agent from Defendant NGCB proceeded to say that he "watched the surveillance video ten times and was 100% sure that Mr. Padilla stole a $25 casino chip."

25. Mr. Padilla vehemently denied the allegation and claim, and exclaimed he was innocent, however the Caucasian officer or agent from Defendant NGCB was unrelenting with his accusation; the African-American man then proceeded to discuss with Mr. Padilla his

clothing and shoes that he was wearing when playing at the craps table, which Mr. Padilla provided a specific detail. He was also asked if he was drinking and drunk while playing, which Mr. Padilla denied.

26. Following the questioning, the Caucasian officer or agent from Defendant NGCB and the African-American man left the holding cell where Mr. Padilla remained confined with his hands *tightly hand-cuffed behind his back* and in dire pain from the tight handcuffs.

27. Due to the handcuffs being placed overly tight on Mr. Padilla's wrists, his wrists became extremely sore and his hands, wrists and arms started to tingle with pin/needle like pain shooting throughout both arms. In a panic, Mr. Padilla started to pound on the locked door with his head (as his hands were tightly cuffed *behind his back*) as means to get the attention of Defendant MGM's security officer or agent who was stationed outside the locked door.

28. The Defendant MGM security officer or agent asked what was wrong, to which Mr. Padilla expressed the dire pain he was experiencing due to the handcuffs being affixed too tight causing him physical pain and ailments. Rather than addressing Mr. Padilla's pain the Defendant MGM security officer or agent, told him to "hang tight and that they (the Caucasian officer or agent from Defendant NGCB and the African-American man) will be back shortly."

29. As the physical pain and ailments became increasingly worse, Mr. Padilla was an again forced to pound his head on the door to get the Defendant MGM security officer's or agent's attention, begging and pleading with him to loosen the handcuffs as his arms started to go numb due to the pain caused by the tightness of the handcuffs; again, no relief provided.

30. Finally, the cell door opened and a person who identified himself as part of Defendant MGM's security department said that the surveillance video was watched again and that the video revealed that "it was not you [Mr. Padilla] who stole a gaming chip, but another person." During such time, the handcuffs were finally removed from Mr. Padilla's wrists – not because of his pleas for help to relieve the overly tight handcuffs, but because the evidence, i.e., surveillance video, revealed that Mr. Padilla was not the culprit.

31. While Mr. Padilla knew he was innocent of the allegation, he was outraged at the Caucasian man from Defendant NGCB who exclaimed that he "watched the surveillance video ten times" and that he "was 100% sure that Mr. Padilla stole a $25 gaming chip."

32. Mr. Padilla was then informed of the identifying characteristics of the person who committed the theft: a drunk and belligerent individual (unlike Mr. Padilla who was not intoxicated or belligerent); an older white man (unlike Mr. Padilla who is middle-aged Hawai'ian who has a Pacific-Islander darker complexion); who had on vastly different clothing and shoes from that of Mr. Padilla; and was wearing a hat (unlike Mr. Padilla who was not wearing a hat).

33. Interestingly, the African-American man, who then identified himself as the Caucasian man's "partner" (thus, finally he was understood to be an officer or agent of Defendant NGCB) expressed to Mr. Padilla that he did not believe Mr. Padilla was the culprit and he "knew they had the wrong guy" as Mr. Padilla was not drinking and drunk, not obnoxious and belligerent, looked completely different and was wearing completely different clothing.

34. Disturbingly, while Mr. Padilla was confined in the guarded and locked cell being wrongfully detained, Defendant MGM security officers or agents went to Mr. Padilla's hotel room where his terrified family remained to inform Ms. Padilla that she, her son and aunt needed to immediately pack their belongings, to leave the property and that they were banned from all MGM resorts, hotels and casinos, and, worse, they were grossly informed that Mr. Padilla was under arrest and being transported to the Las Vegas Metropolitan Police Department.

35. Once the surveillance video proved that Mr. Padilla was not involved in any theft, he was released from the detention holding cell whereupon Defendant MGM security officers or agents escorted Mr. Padilla back to his room. Mr. Padilla was then reunited with his family who were crying and emotionally distraught as they were gathering their belongings believing that Mr. Padilla was in police custody and being transported to the police station (as grossly told by Defendant MGM officers or agents).

36. Upon his return, while Mr. Padilla and his family were overwhelmed with joy, they observed that Mr. Padilla's wrists were bruised and had significant indentions and

impression markings from the tightness of the handcuffs placed on him by the Defendant NGCB officer or agent and grossly ignored and disregarded by the Defendant MGM security officer or agent. As such, Mr. Padilla went to the hospital for an examination and assessment, and to receive medical attention and care for the pain he was experiencing.

37. Following Mr. Padilla's return to Hawai'i, his wrists/hands continued to hurt and his ailments remained forcing him to seek and continue to seek medical care and attention. To this day, Mr. Padilla still suffers from harm and damage caused by the overly tight handcuffs and the failure to remediate the improperly placed handcuffs on him; in fact, this pain and suffering is and has continued to plague him and has been diagnosed as a permanent and irreversible condition that has, does and will affect Mr. Padilla's livelihood, wellbeing, and welfare.

38. As a direct and proximate result of the wrongful and harmful conduct of all Defendants, Mr. Padilla has been and is severely and permanently injured physically, emotionally, and monetarily.

## FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
### Excessive Force Violation of Plaintiff's 4th and 14th Rights
### (Against Defendant NGCB, its Officers or Agents, individually, as Doe Defendants)

39. Plaintiff specifically incorporates and includes Paragraphs 1 through 38, above, as though fully set forth herein.

40. 42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in any action at law, suit at equity or other proper proceeding for redress.

41. At all relevant times herein, Defendant NGCB and its officers or agents acted under color of state law and their unlawful, excessive and improper actions including, but not limited to, the excessive use of force used against Mr. Padilla on or about December 25, 2020, deprived Mr. Padilla of his particular right under the Fourth and Fourteenth Amendment of the United States Constitution.

42. Defendant NGCB and its officers or agents used excessive force when confronting, handcuffing and placing the innocent Mr. Padilla under arrest and that their force was unreasonable because Defendant NGCB and its officers or agents did not need to use any force at all in their contact with Mr. Padilla as (1) he was compliant at all times, (2) he did not pose a threat to the safety and wellbeing of Defendant NGCB and its officers or agents, (3) he was not resisting arrest at any time during the encounter, (4) he provided no reason to cause Defendant NGCB and its officers or agents to believe that any force was necessary to be used against Mr. Padilla and that the force applied to Mr. Padilla, given the circumstances, was objectively unreasonable, (5) despite having no reason to believe force was necessary against Mr. Padilla, Defendant NGCB and its officers or agents proceeded to levy a hosts of false accusations (such as, "I watched the surveillance video ten times and I am 100% sure you stole a $25 gaming chip") and placed Mr. Padilla in handcuffs with such unreasonable and excessive force and pressure applied to the handcuffs to cause and inflict severe pain and permanent harm to Mr. Padilla wrists/hands, (6) Mr. Padilla pleaded for assistance to reduce the tightness and intensity of the handcuffs, (7) that the claim or offense that Mr. Padilla was being detained for was grossly and wrongfully asserted given that the video surveillance evidence actually, clearly and unequivocally revealed and reflected that Mr. Padilla was not the culprit given the divergent and incongruent physical differences between Mr. Padilla and the actual suspect, and (8) that Mr. Padilla was forced to seek medical care and attention following the wrongful, harmful and forceful detention of Mr. Padilla while a lawful guest at the MGM Grand hotel.

43. Defendant NGCB and its officers or agents acted under color of law and authority in the forceful detention and arrest of Mr. Padilla, to place him under arrest without lawful

justification and subjecting him to excessive force, therefore depriving Mr. Padilla of certain Constitutionally protected rights including, but not limited to:

    a. The right not to be deprived of liberty or property without the due process of law as guaranteed by the Fourth, Fifth and/or Fourteenth Amendments of the United States Constitution;

    b. The right to be free from use of excessive force by law enforcement officers as guaranteed by the Fourth and/or Fourteenth Amendments of the United States Constitution; and

    c. The right to be free from pre-conviction punishment as guaranteed by the Fourth, Fifth and/or Fourteenth Amendments of the United States Constitution.

44. That as the proximate result of Defendant NGCB officers and agents harmful, wrongful and unlawful conduct as alleged herein, Mr. Padilla suffered and continues to suffer physical injuries and pain.

45. That the harmful, wrongful and unlawful acts perpetrated by Defendant NGCB officers or agents, and each of them, were performed with such a disregard of the well-established and Constitutionally protected rights and interests of Mr. Padilla.

46. That such a disregard of Mr. Padilla's well-established and Constitutionally protected individual rights and interests shocks the conscience.

47. Mr. Padilla had a firmly established right under the United States Constitution to be free from unreasonable physical abuse, assault and battery; Mr. Padilla had a firmly established right to be free from excessive force; Mr. Padilla had a right to be free from imposition of summary punishment with due process of law; Mr. Padilla had a right to be free from the imposition of cruel and unusual punishment, and free from false imprisonment.

48. On December 25, 2020, Mr. Padilla did not pose any threat to Defendant NGCB or its officers or agents before, during and after he was ordered to stand, place his hand *behind his back*, aggressively handcuffed (handcuffs being applied overly tight) and placed under arrest.

49. Defendant NGCB officers or agents use of force was unreasonable in light of the facts and circumstances at the time and at all relevant times Defendant NGCB's officers or agents were performing their duties as officers or agents of Defendant NGCB.

50. At all times relevant herein, Defendant NGCB and its officers or agents were acting under color of law, to wit, under color of statutes, ordinances, regulations, customs and usages of the State of Nevada.

51. At all times relevant herein, Defendant NGCB and its officers or agents, and each of them, acted and behaved in a manner that shocked the conscience and, as a result of their misconduct, Defendant NGCB and its officers or agents are all liable to Mr. Padilla for the injuries and damages that Mr. Padilla suffers from because they were integral participants in the use of excessive force against Mr. Padilla or because they failed to intervene to prevent the Constitutional violations inflicted upon Mr. Padilla.

52. Mr. Padilla was subjected to humiliation, intimidation, fear, physical injury, as well as pain and suffering caused by the illegal acts of Defendant NGCB and its officers or agents such that Mr. Padilla is entitled to all allowable damages.

53. As a result of Defendant NGCB and its officers or agents actions/activities, Mr. Padilla has been forced to retain an attorney to prosecute this action in defense of his rights and interests, thus Defendant NGCB and its officers or agents should be required to pay for Mr. Padilla's reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Negligence

**(Against all named Defendants including Doe and Roe Defendants)**

54. Plaintiff specifically incorporates and includes Paragraphs 1 through 53, above, as though fully set forth herein.

55. At all times relevant herein, all Defendants including the Doe and Roe Defendants were subject to a duty of care to act reasonably to avoid and prevent unnecessary physical harm and distress in the exercise of their duties and function. The conduct of all Defendants including

the Doe and Roe Defendants did not comply with the standard of care to be exercised in the performance of their duties and function.

56. As such, the actions and inactions of all Defendants including the Doe ad Roe Defendants were performed negligently and recklessly including, but not limited to, the failure to properly and adequately assess the need for use of force against Mr. Padilla and that they engaged in overly aggressive and wrongful use of excessive force against Mr. Padilla.

57. At all times relevant herein, all Defendants including the Doe and Roe Defendants acted negligently in assessing and addressing the surveillance video which depicted and revealed that Mr. Padilla unequivocally did not commit any crime and was not the culprit.

58. The evidence undeniably revealed Mr. Padilla's innocence notwithstanding the unambiguous expression by the Caucasian man (an officer or agent of Defendant NGCB) that he "watched the surveillance video ten times" and that he "was 100% certain that Mr. Padilla stole a $25 gaming chip" and that Defendant MGM's officers or agents were negligent in securing Mr. Padilla from his hotel room and leading to Mr. Padilla's forceful and unlawful confinement.

59. As a direct and proximate result of all Defendants' (including the Doe and Roe Defendants) negligence as alleged herein, Mr. Padilla has been damaged in an amount in excess of the jurisdictional limits, the exact amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

#### Battery

**(Against All Defendants including Doe and Roe Defendants)**

60. Plaintiff specifically incorporates and includes Paragraphs 1 through 59, above, as though fully set forth herein.

61. At all relevant times herein, all Defendants' (including Doe and Roe Defendants) conduct, as described above, subjected Mr. Padilla to harmful and offensive conduct, specifically, bodily harm and damages.

62. At all relevant times herein, all Defendants' (including Doe and Roe Defendants) actions were willful, intentional, malicious and/or performed with a such a reckless and/or

1  callous disregard for Mr. Padilla's health, safety and welfare leading to the harmful and offensive
2  contact with Mr. Padilla who was ultimately injured thereby.

3     63.    Defendant NGCB and Defendant MGM are both vicariously liable via *respondeat superior*, principal/agent or otherwise for their respective officers or agents who were acting and performing on their respective behaves in relation to Mr. Padilla.

6     64.    Aa a direct and proximate result of all Defendants' (including Doe and Roe Defendants) conduct and activities, Mr. Padilla has been damaged in an amount in excess of jurisdictional limits, the exact amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Negligent Hiring, Retention and Supervision

### (Against Defendant NGCB and Defendant MGM)

65. Plaintiff specifically incorporates and includes Paragraphs 1 through 64, above, as though fully set forth herein.

66. Defendant NGCB and Defendant MGM owed several duties to Mr. Padilla including, but not limited to:

   a. The duty to keep members of the public and/or invitees safe from the negligence and/or criminal acts of its employees;

   b. The duty to provide responsible and properly trained personnel;

   c. The duty to act reasonably under the circumstances; and

   d. The duty to take action to control the wrongful acts of its employees, agents, officers and/or representatives which it has/had reason to anticipate such acts.

67. Defendant NGCB and Defendant MGM breached these duties by hiring individuals prone to unlawful behavior and/or individuals who were not qualified to ensure the health, safety and welfare of members of the public and/or invitees.

68. Defendant NGCB and Defendant MGM further breached the aforementioned duties by failing to properly train and adequately supervise their respective employees, agents, officers and/or representatives.

RAFFI A. NAHABEDIAN
7408 Doe Avenue
Las Vegas, Nevada 89117
Tel: (702) 379-9995 / Fax: (702) 222-1496

69. Defendant NGCB and Defendant MGM further breached the aforementioned duties by not acting reasonably and justly under the circumstances herein described and alleged leading to the harm, injuries and damages sustained by Mr. Padilla.

70. That as a direct and proximate result of Defendant NGCB's and Defendant MGM's actions, Mr. Padilla suffered damages in excess of jurisdictional limits, the exact amount to be proven at trial.

71. The conduct of Defendant NGCB and Defendant MGM was willful, intentional, oppressive and done in wanton and/or reckless disregard for the rights of Mr. Padilla warranting the imposition of punitive damages on said Defendants.

### FIFTH CLAIM FOR RELIEF

### False Imprisonment

**(Against Defendant NGCB and Defendant MGM including Doe and Roe Defendants)**

72. Plaintiff specifically incorporates and includes Paragraphs 1 through 71, above, as though fully set forth herein.

73. Defendant NGCB and Defendant MGM, by and through their respective officers or agents, intentionally and unlawfully exercised force and intimidation, or the express or implied threat of force and intimidation to restrain, detain and confine Mr. Padilla to a security holding cell that was being guarded by one of Defendant MGM's officers or agents.

74. That Defendant NGCB'a officer or agent further confined and imprisoned Mr. Padilla by having him place his hands behind his back and aggressively handcuffing him (with overly tight handcuffs), whereby Mr. Padilla was informed he was under arrent until analysis could be undertaken relating to surveillance video.

75. Mr. Padilla was then left alone in a closed-door holding cell being guarded by Defendant MGM's officer or agent while the surveillance video was viewed and analyzed.

76. Mr. Padilla submitted to the imprisonment based on the fear and intimidation of Defendant NGCB's officer's or agent's unambiguous proclamation that he "watched the surveillance video ten times and I am 100% sure that you [Mr. Padilla] stole a $25 casino chip."

77. However, the evidence contained on the surveillance video undeniably and objectively revealed that Mr. Padilla *was not* the person who "stole the $25 casino chip" as unambiguously expressed by the African-American man (who finally identified himself as an officer or agent of Defendant NGCB); thus, Mr. Padilla's confinement and imprisonment was wrongful and he did not agree or consent to such a wrongful confinement and imprisonment.

78. As a direct and proximate result of the false imprisonment of Mr. Padilla by Defendant NGCB and its officers or agents, as well as Defendant MGM and its officers or agents, all of whom (the officers or agents) were acting within the course and scope of their respective employment and, thus, Mr. Padilla who was wronged suffered harm and damages in excess of jurisdictional limits, the exact amount to be proven at trial.

WHEREFORE Plaintiff, expressly reserving the right to amend this Complaint prior to and/or the time of trial of the actions herein or as discovery warrants to include all items of damages not yet ascertained, demands judgment against Defendants, and each of them, for the following relief:

1. An award of compensatory, general damages and special damages in excess of the jurisdictional limit, greater than $75,000, subject to proof at trial;

2. An award of both pre-judgment and post-judgment interest;

3. An award of reasonable attorneys' fees and costs as allowed by law;

4. An award of punitive/exemplary damages; and,

5. Any other relief this Court deems just and proper including, but not limited to, the reimbursement of all payments, fees, expenditures and expenses paid/incurred by Plaintiff.

DATED this 20th day of December 2022.

LAW OFFICE OF RAFFI A. NAHABEDIAN

By: _____
RAFFI A. NAHABEDIAN, ESQ.
Nevada Bar No. 9347
7408 Doe Avenue
Las Vegas, Nevada 89117
*Attorney for Plaintiff*