# EXHIBIT 1

# EXHIBIT 1

AARON D. FORD
  Attorney General
MICHAEL P. SOMPS (Bar No. 6507)
  Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
5420 Kietzke Lane, #202
Reno, Nevada 89511
(775) 687-2124 (phone)
(775) 850-1150 (fax)
msomps@ag.nv.gov

*Attorneys for Kevin Adams*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHAWN PADILLA, an individual, | Case No. 2:22-cv-02109-RFB-BNW |
| Plaintiff. | |
| vs. | |
| MGM GRAND HOTEL, LLC, a Nevada entity; ANDREW STEVENSON, an individual (Doe 1); KEVIN ADAMS, an individual (Doe 2); DOES III through X, and ROES 1 through X, | **MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| Defendants. | |

COMES NOW, Defendant KEVIN ADAMS (hereinafter "ADAMS") in his individual capacity, by and through his attorneys AARON D. FORD, Attorney General, and MICHAEL P. SOMPS, Senior Deputy Attorney General, and hereby moves to dismiss Plaintiff's Second Amended Complaint against him pursuant to FED. R. CIV. P 12(b)(6).

This Motion is based upon the attached Points and Authorities in Support of the Motion to Dismiss Second Amended Complaint and all other papers and pleadings on file.

**POINTS AND AUTHORITIES**

**I. BACKGROUND**

Plaintiff, SHAWN PADILLA, filed a Second Amended Complaint (hereinafter "Complaint") in the U.S. District Court, District of Nevada on January 24, 2024 against MGM GRAND HOTEL, LLC (hereinafter "MGM") and against Nevada Gaming Control Board (NGCB) Agents KEVIN ADAMS and ANDREW STEVENSON in their individual

capacities[1]. ECF No. 37.

Plaintiff's Complaint stems from allegations surrounding Plaintiff's stay at the MGM on or about December 26, 2020. *Id*. at ¶ 16. Following checking in, Plaintiff alleges that he played craps at the MGM for several hours. *Id*. at ¶¶ 17 and 22. After playing craps, Plaintiff returned to his room. *Id*. at ¶ 2. At around 4:00 a.m., MGM security officers allegedly knocked on Plaintiff's door, woke him up, and demanded that he come with them to meet with NGCB agents. *Id*. at ¶¶ 23 – 24. Plaintiff was allegedly told by MGM security that he had stolen a $25 casino chip while playing craps. *Id*. at ¶ 29. Further, the MGM allegedly contacted and informed the NGCB regarding the theft of the $25 casino chip by Mr. Padilla resulting in NGCB dispatching ADAMS and STEVENSON to the MGM. *Id*. at ¶¶ 11, 13 and 63.

Plaintiff alleges that MGM security placed him in a holding cell located in the MGM's security office. *Id*. at ¶ 29. After approximately 10 minutes, Plaintiff alleges that NGCB agents ADAMS and STEVENSON entered the room and then STEVENSON ordered Plaintiff to stand up, turn around and put his hands behind his back. *Id*. at ¶ 30. Plaintiff further alleges that STEVENSON grabbed Plaintiff, aggressively handcuffed and mirandized him, and informed him that he was under arrest. *Id*. at ¶ 32. STEVENSON allegedly informed Plaintiff that he stole a $25 casino chip while playing craps. *Id*. at ¶ 33. Plaintiff alleges that he denied stealing a $25 casino chip and he was questioned by ADAMS about the clothing and shoes he was wearing while playing craps and whether Plaintiff had been drinking. *Id*. at ¶¶ 34 – 35. ADAMS and STEVENSON subsequently left the holding cell. *Id*. at ¶ 36. Plaintiff then alleges that because the handcuffs were overly tight, his wrists became sore and his hands, wrists and arms started to tingle with pain. *Id*. at ¶ 37. Plaintiff alleges that he pounded on the locked door with his head to get the attention of the MGM security officers located outside the door and then told an MGM security officer that the handcuffs were causing pain. *Id*. at ¶¶ 38 – 39. Plaintiff was allegedly told by the

---

[1] To date, STEVENSON has apparently not been served with Plaintiff's Complaint, although the arguments presented herein are largely also applicable to STEVENSON.

MGM security officer to hang tight and that the NGCB agents would return shortly. *Id*. at ¶ 40.

Plaintiff goes on to allege that the pain became worse, and he again pounded his head on the door to get the attention of an MGM security officer. *Id*. at ¶ 42. Plaintiff then allegedly sought assistance from the MGM security officer to loosen the handcuffs, but no relief was provided. *Id*. at ¶¶ 42 – 43. Soon thereafter, Plaintiff alleges that ADAMS and another NGCB agent, agent Tipton, returned to the holding cell along with an MGM security officer and informed Plaintiff that the surveillance video revealed that Plaintiff did not steal the $25 casino chip, and the handcuffs were removed. *Id*. at ¶¶ 44 – 45.

Based on the preceding, Plaintiff's Complaint alleges that he suffered injuries (*Id*. at ¶ 66) and alleges the following causes of action: 1) Violation of 42 U.S.C. § 1983 solely against ADAMS and STEVENSON; 2) Negligence against all Defendants; 3) Battery against all Defendants; 4) Negligent Hiring, Retention, and Supervision solely against the MGM; 5) False Imprisonment against all Defendants; and 6) Intentional Infliction of Emotional Distress solely against the MGM.

## II.   ARGUMENT

### A.   Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are to be construed in the light most favorable to the non-moving party. *Russel v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). A dismissal under Fed. R. Civ. P. 12(b)(6) is essentially a ruling on a question of law. *North Star International v. Arizona Corp. Comm'n.*, 720 F.2d 578, 580 (9th Cir. 1993). For a defendant-movant to succeed, it must appear to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 172 (9th Cir. 1997). The Court need not assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *In re Verifone Securities Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("[c]onclusory allegations of law and unwarranted

1  inferences are insufficient to defeat a motion to dismiss for failure to state a claim"). To

2  survive a motion to dismiss, a plaintiff's allegations must not merely be conceivable, they

3  must also be plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal

4  can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

5  under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

6  Cir. 1984).

### B.  Plaintiff Has Not Sufficiently Alleged a 42 U.S.C. § 1983 Cause of Action Against Adams

9  Plaintiff's First Cause of Action against ADAMS, as well as against STEVENSON,

10  is for a violation of 42 U.S.C. § 1983 based on excessive force and possibly unlawful arrest.

11  However, Plaintiff's § 1983 cause of action should be dismissed as the allegations of

12  Plaintiff's Complaint do not support the existence of any violation of the Constitution or

13  laws of the United States. Alternatively, to the extent Plaintiff has sufficiently pled a §

14  1983 violation, ADAMS is entitled to qualified immunity.

#### 1.  Excessive Force

16  Plaintiff's § 1983 Cause of Action appears to arise primarily from allegations that

17  ADAMS and STEVENSON used excessive force against Plaintiff. Specifically, Plaintiff

18  alleges, in relevant part, that ADAMS and STEVENSON "demonstrated excessive, and

19  improper actions including, but not limited to, unambiguously lying to Mr. Padilla about

20  the evidence and the excessive force used against Mr. Padilla . . ." ECF No. 37 at ¶ 70[2]. In

21  addition, Plaintiff alleges that ADAMS and STEVENSON "used excessive force when

22  confronting, confining, handcuffing, and placing the innocent Mr. Padilla under arrest and

---

23      [2] Plaintiff's allegations also suggest he is pursuing a claim for violating 42 U.S.C. §
24  1983 based on "lying to [him] about the evidence . . ." ECF No. 37 at ¶ 70. To the extent
     Plaintiff is seeking to pursue such a claim, law enforcement lying to a suspect does not
25  violate anything, including 42 U.S.C. § 1983. *See State v. Johnson*, 8 Wash. App. 2d 728,
     743, 440 P.3d 1032, 1041 (2019) (citations omitted) ("It is so that the police do not violate
26  either the state or federal constitutions simply by lying to potential suspects or witnesses.").
     *See also Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir.1992), cert. denied, 506 U.S.
27  1082 (1993)) ("Of all the numerous varieties of police trickery, however, a lie that relates
     to a suspect's connection to the crime is the least likely to render a confession involuntary.")
28  (citations omitted).

that their force was unreasonable." *Id*. at ¶ 71. Elsewhere in his Complaint, Plaintiff makes additional allegations that he was subjected to "excessive force." *Id*. at ¶ 72.

### a. The Constitutional Right Infringed with an Excessive Force Claim is the 4th Amendment

Plaintiff alleges, in support of his § 1983 excessive force claim, that he was deprived of his rights under the 4th and 14th Amendment to the U.S. Constitution[3]. *Id*. at p. 14. However, "in addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citations omitted). With an excessive force claim, the specific Constitutional right infringed is the 4th Amendment, not the 14th Amendment. The Court in *Graham* stated that "[t]oday we . . . hold that *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id*. at 395 (emphasis in original).

### b. Plaintiff's Allegations Do Not Support a 42 U.S.C. § 1983 Excessive Force Claim Against Adams

Considering the facts as alleged by Plaintiff and the application of the proper Constitutional provision to those facts, ADAMS' and STEVENSON's actions were reasonable. Therefore, Plaintiff cannot maintain an excessive force claim.

The allegations of Plaintiff's First cause of action suggest that Plaintiff's excessive force claim is premised on: 1) the act of placing Plaintiff in handcuffs; and 2) the handcuffs were excessively tight.

---

[3] Plaintiff appears to also rely on a violation of Article 1, Sections 8 and 18 of the Nevada Constitution to support his 42 U.S.C. §1983 cause of action. However, a § 1983 cause of action can only be based on a deprivation of a right protected by the U.S. Constitution or by federal law. *See Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) ("Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.") (citations omitted).

1 | **i.     Placing Plaintiff in Handcuffs**

Plaintiff's Complaint could be construed as pursuing an excessive force claim stemming from the handcuffing of Plaintiff. ECF No. 37 at ¶ 71. However, the decision and simple act of handcuffing Plaintiff under the alleged circumstances is objectively reasonable and does not constitute excessive force.

The Court in *Graham* set forth factors to consider in assessing the reasonableness of the force used in a particular situation. Those factors include: 1) the severity of the crime; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham* at 396.

Again, accepting Plaintiff's allegations, ADAMS and STEVENSON were dispatched to the MGM because the MGM reported to the NGCB that Plaintiff had been detained by the MGM for stealing a $25 casino chip while playing the game of craps. ECF No. 37 at ¶¶ 11, 13, 29 and 63. The accusations made by the MGM against Plaintiff constitute a felony pursuant to NRS 465.070(3) in conjunction with NRS 465.088(1)(a)[4]. With the information available to the NGCB agents at that point, STEVENSON handcuffed and arrested Plaintiff. ECF No. 37 at ¶ 32.

Applying the factors set forth in *Graham*, while Plaintiff alleges that he did not pose a threat to ADAMS or STEVENSON and that Plaintiff was not resisting, the allegations also make clear that Plaintiff was being arrested for a felony. ECF No. 37, ¶ 71. The seriousness of the crime Plaintiff was arrested for weighs in favor of the reasonableness of the decision to handcuff Plaintiff, which is a relatively minimal use of force under the alleged circumstances. It's also noteworthy that handcuffing arrestees is a normal and

---

[4] NRS 465.070(3) provides that "[I]t is unlawful for any person . . . [t]o claim, collect or take, or attempt to claim, collect or take, money or anything of value in or from a gambling game, with intent to defraud, without having made a wager contingent thereon, or to claim, collect or take an amount greater than the amount won."
NRS 465.088(1)(a) provides that "[a] person who violates any provision of NRS 465.070 to 465.086, inclusive . . . [f]or the first offense, is guilty of a category C felony and shall be punished as provided in NRS 193.130."

accepted practice. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, at 396. Further, in concluding on a motion for summary judgment that an officer's use of handcuffs was objectively reasonable when the officer arrested an individual for a non-violent misdemeanor, a U.S. District Court stated that "courts have recognized that the use of handcuffs in effecting an arrest is 'standard practice.'" *Shaw v. City of Redondo Beach*, 2005 WL 6117549, at 7 (C.D. California, 2005) (citations omitted). *See also LaLonde v. County of Riverside*, 204 F.3d 947, 964 (9th Cir. 2000) (Trott, J., concurring in part, dissenting in part) ("Handcuffing an arrestee is standard practice, everywhere."). *See also Mglej v. Gardner*, 974 F.3d 1151, 1166 (10th Cir. 2020) ("[T]he Tenth Circuit has noted that 'in nearly every situation where an arrest is authorized . . . handcuffing is appropriate.'") (citations omitted).

The facts, as alleged by Plaintiff, do not establish a violation of the 4th Amendment for excessive force stemming from simply handcuffing Plaintiff. Therefore, Plaintiff's excessive force claim should be dismissed for failure to state a claim upon which relief can be granted.

### ii.    Excessively Tight Handcuffs

Plaintiff's Complaint can also be construed as attempting to pursue a claim of excessive force based on the handcuffs being overly tight and painful. ECF No. 37, ¶ 71. However, the actions of ADAMS and STEVENSON during the period of time Plaintiff was in the handcuffs were objectively reasonable and do not constitute excessive force.

Numerous court cases support that, for Plaintiff to succeed on an excessive force claim stemming from excessively tight handcuffs, ADAMS and STEVENSON would have had to observe Plaintiff in visible pain or they were somehow aware that the handcuffs were causing Plaintiff pain, but that the NGCB agents ignored those things. *See Crump v. Bay Area Rapid Transit District*, 821 Fed.Appx. 705, 708 (9th Cir. 2020) (In affirming a lower court's grant of summary judgment on an excessive force claim, arising from

handcuffing, based on qualified immunity, the court stated, "there is simply no indication that the officers could or should have known that they were causing him pain in violation of the Constitution."). In support of its decision, *Crump* cited to *Wall v. Cty. Of Orange*, 364 F.3d 1107, 1110, 1112 (9th Cir. 2004) (Reversing grant of qualified immunity where plaintiff twice asked officers to loosen handcuffs) and to *Meredith v. Erath*, 342 F.3d 1057, 1059-60 (9th Cir. 2003) (Rejecting qualified immunity where plaintiff "complained several times that the handcuffs were too tight and were causing her pain, but for 30 minutes they were left as they were"). *See also Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) ("In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight.") (citations omitted).

Plaintiff's Complaint does not allege that Plaintiff complained to either ADAMS or STEVENSON that the handcuffs were too tight or causing pain. In fact, there are no allegations that ADAMS or STEVENSON had any knowledge of overly tight or painful handcuffs. Instead, Plaintiff alleges that, after questioning Plaintiff, ADAMS and STEVENSON left Plaintiff in the holding cell. ECF No. 37, ¶ 36. Only after ADAMS and STEVENSON had left the holding cell does Plaintiff allege that his wrists "became" sore and that he "started" to feel pain. *Id*. at ¶ 37. Then, Plaintiff alleges that he complained on two occasions to MGM security officers, not ADAMS or STEVENSON, that Plaintiff was in pain due to overly tight handcuffs. *Id*. at ¶¶ 38 – 39 and 42. Further, Plaintiff alleges that it was MGM security officers who disregarded Plaintiff's pleas and failed to assist him. *Id*. at ¶¶ 40 and 43. Plaintiff makes no allegation that ADAMS or STEVENSON were told by MGM security officers, or told by anybody, that Plaintiff was complaining that the handcuffs were causing him pain. Finally, upon ADAMS' return to the holding cell, the handcuffs were immediately removed from Plaintiff. *Id*. at ¶ 45.

Elsewhere in Plaintiff's Complaint, Plaintiff makes general allegations which might be construed to suggest that Plaintiff sought assistance from ADAMS and STEVENSON

to loosen the handcuffs. *Id.* at ¶71. However, those allegations should be read in conjunction with the specific allegations made earlier in the Complaint that the pleas for assistance occurred when ADAMS and STEVENSON were not in the holding cell and those pleas were directed to MGM personnel. It would be inconsistent to construe Plaintiff's Complaint otherwise. The Court need not accept as true allegations "that are internally inconsistent." *Riggs v. Clark County School Dist.*, 19 F.Supp.2d 1177, 1179 (D. Nev. 1998) (citations omitted).

The facts, as alleged by Plaintiff, do not establish a violation of the 4th Amendment for excessive force stemming from excessive pain caused by Plaintiff's handcuffing. Both ADAMS and STEVENSON's actions were objectively reasonable as a matter of law and Plaintiff's § 1983 excessive force claim should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Plaintiff's Allegations Do Not Support a 42 U.S.C. § 1983 Unlawful Arrest Claim Against ADAMS

Plaintiff alleges in his Complaint that his arrest was "without lawful justification," suggesting that unlawful arrest also forms the basis for a § 1983 claim. ECF No. 37, ¶ 72. However, Plaintiff's allegations are insufficient to establish such a claim.

To succeed on a § 1983 unlawful arrest claim, Plaintiff's arrest must have been without probable cause. "It is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) quoting *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). *See also Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification.") (citations omitted).

Plaintiff's Complaint establishes the existence of probable cause. "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the

1 suspect had committed a crime." *Dubner* at 966. *See also Roberts v. McAfee, Inc.*, 660 F.3d
2 1156, 1164 (9th Cir. 2011) (citations omitted) ("Probable cause for the initiation of a criminal
3 prosecution exists where 'it was objectively reasonable for the defendant to suspect the
4 plaintiff had committed a crime.' Whether probable cause existed on the facts known to the
5 defendant is a question of law for the court.").

6     As alleged by Plaintiff, both ADAMS and STEVENSON were dispatched to the MGM
7 because the MGM reported that Plaintiff had been detained by the MGM for stealing a $25
8 casino chip while playing the game of craps. ECF No. 37, ¶¶ 11, 13 and 29. As discussed
9 above, the accusations made by the MGM against Plaintiff constitute a violation of NRS
10 465.070(3), which is a felony. With the information STEVENSON and ADAMS initially had
11 at the time as provided by the MGM, Plaintiff was arrested. ECF No. 37, ¶ 32. Of course,
12 as soon as the NGCB agents determined that Plaintiff was not the individual who stole the
13 $25 casino chip, the handcuffs were immediately removed, and Plaintiff was free to go.

14     Probable cause for Plaintiff's arrest existed. A prudent person would believe that
15 Plaintiff had committed a crime under the circumstances and there is no legal basis for a §
16 1983 unlawful arrest claim. Therefore, to the extent Plaintiff is pursuing a § 1983 claim for
17 unlawful arrest, Plaintiff has failed to state a claim upon which relief can be granted.

18
19       **3.   Adams is Entitled to Qualified Immunity for Plaintiff's 42 U.S.C. §1983 Claim**

20     To analyze whether ADAMS is entitled to qualified immunity for Plaintiff's 42
21 U.S.C. § 1983 claim, the threshold question in the analysis is to determine if the facts
22 alleged make out a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If a
23 violation could be made out on a favorable view of the parties' submissions, the next,
24 sequential step is to ask whether the right was clearly established." *Id.* In accordance with
25 *Pearson v. Callahan*, 555 U.S. 223, 236–42(2009), either prong may be addressed first.

26     As discussed above, Plaintiff's 4th Amendment rights were not violated. However,
27 even assuming that Plaintiff's Complaint does sufficiently allege a § 1983 cause of action,
28 ADAMS is entitled to qualified immunity as his actions did not violate a clearly established

1  right and he acted reasonably.

2      The United States Supreme Court has held that law enforcement officers are
3  "shielded from liability for civil damages insofar as their conduct does not violate clearly
4  established statutory or constitutional rights of which a reasonable person would have
5  known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Anderson v. Creighton*, 483
6  U.S. 635, 638 (1987) (qualified immunity protects "all but the plainly incompetent or those
7  who knowingly violate the law") (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "An
8  officer is presumed to be immune from any damages caused by his constitutional violation."
9  *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994) (citing *Elder v. Holloway*, 975
10 F.2d 1388, 1392 (9th Cir. 1991), *rev'd on other grounds*, 510 U.S. 510 (1994)). "To overcome
11 this presumption, a plaintiff must show that the officer's conduct was 'so egregious that
12 any reasonable person would have recognized a constitutional violation.'" *Id.* at 1438
13 (citations omitted).

14     The court in *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1319 (9th Cir. 1995),
15 stated:

16          [T]he right the official is alleged to have violated must have been
            "clearly established" in a more particularized, and hence more
17          relevant, sense: The contours of the right must be sufficiently
            clear that a reasonable official would understand what he is doing
18          violates that right . . . . [i]n light of preexisting law the
            unlawfulness must be apparent.
19

20          (quoting *Anderson* at 640 (1987)).

21     Further, the burden is on Plaintiff to identify the specific right allegedly violated and
22 to demonstrate that the right was clearly established at the time of the alleged misconduct.
23 *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991) (citing *Baker v. Racansky*, 887
24 F.2d 183, 185 (9th Cir.1989)).

25     Finally, the policy of shielding public officials from liability on the basis of qualified
26 immunity is that finding government officials liable for damages for every action that is
27 found subsequently to have been violative of constitutional rights and have caused
28 compensable injury, imposes an unfair burden upon the decision maker in the course of

exercising his discretion. *Wood v. Strickland*, 420 U.S. 308, 319 (1975). The court further found that imposition of damages for such actions would "undoubtedly deter even the most conscientious decision-maker from exercising his judgment, independently, forcefully, and in a manner best serving long term interests . . ." *Id.* at 319 - 320.

Plaintiff cannot meet his burden to demonstrate that ADAMS violated a clearly established right at the time of the alleged misconduct. It is true that the 4th Amendment right to be free from unreasonable searches and seizures is clearly established. However, identifying the right in a more particularized fashion is necessary.

With Plaintiff's potential claim of unlawful arrest, Plaintiff's position must be that he has a clearly established right of which a reasonable person would have known to be free from arrest for stealing a $25 casino chip, a felony in Nevada, when law enforcement is informed by the victim, the MGM in this case, of the crime and that Plaintiff was the individual who committed the crime. However, there is no such clearly established right. The information initially available to ADAMS and STEVENSON support a reasonable conclusion that Plaintiff took a $25 casino chip from the game of craps in violation of NRS 465.070(3) and case law supports the ability of law enforcement to arrest under these circumstances. *See Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012) (In analyzing whether NGCB agents were entitled to qualified immunity for a § 1983 unlawful arrest claim, the court stated "[t]he only question is whether [the agents] could have reasonably concluded, under the totality of the circumstances, that a 'fair probability' existed that [the suspect] knew that he controlled [the casino's] property and intended to deprive [the casino] of that property." Not only did probable cause for Plaintiff's arrest exist, but it would not be clear to a reasonable officer that Plaintiff's 4th Amendment rights were violated for his arrest when such probable cause existed.

Similarly, with Plaintiff's possible excessive force claim based on him being handcuffed, it is not a violation of a clearly established right of which a reasonable person would have known when law enforcement, who have lawfully arrested an individual for a felony based on probable cause, then handcuff the individual. Rather, case law supports

that a reasonable officer would conclude that Plaintiff's rights were not violated under such circumstances given that, under existing law, it is standard procedure for law enforcement to handcuff arrestees. *Shaw* at 7*; LaLonde* at 964; and *Mglej* at 1166.

Finally, with Plaintiff's excessive force claim based on handcuffs being placed on him too tightly causing pain, it is not a violation of a clearly established right of which a reasonable person would have known in circumstances where law enforcement officers fail to address an arrestee's painfully tight handcuffs when they are unaware that the handcuffs are causing pain. Again, existing case law supports that a reasonable officer would conclude that no 4th Amendment rights are violated for painful handcuffs when the officer has no knowledge that handcuffs are causing an arrestee pain. *Crump* at 708; *Wall* at 111; and *Meredith* at 1059-60. *See also Davis v. Adamson*, 290 F. Appx. 35, 37 (9th Cir. 2008) (citations omitted) ("Even if the handcuffing . . . amounted to excessive force, a reasonable officer could not have known that his conduct was unlawful, as [the suspect] during the time he was handcuffed did not signal that the cuffs were too tight.").

Plaintiff's allegations do not support the existence of a clearly established right that was violated and ADAMS acted reasonably. Therefore, ADAMS is entitled to qualified immunity.

### C. Plaintiff's Allegations Do Not Support His State Law Causes of Action

Plaintiff's Complaint alleges three state law tort causes of action against ADAMS: 1) Second Claim for Relief – Negligence (ECF No. 37, p. 18); Third Claim for Relief – Battery (*Id*. at p. 21); and 3) Fifth Claim for Relief – False imprisonment (*Id*. at p. 27). To the extent the Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S. Code § 1367, for each of those claims, Plaintiff has failed to state a claim against ADAMS upon which relief can be granted. Alternatively, to the extent the Court concludes that Plaintiff has sufficiently pled his state law claims, ADAMS is entitled to discretionary immunity.

. . .

1            **1.    Negligence**

2    To sufficiently allege a claim for negligence, Plaintiff must establish 1) the existence of a

3    duty of care; 2) a breach of that duty; 3) legal causation; and 4) damages. *Sanchez ex rel.*

4    *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009).

5         Plaintiff alleges that all the defendants owed him a duty of care. ECF No. 37, ¶ 85.

6    In addition, Plaintiff appears to allege that the duty was breached in that the defendants

7    1) failed "to examine and assess the evidence and information available;" 2) failed "to

8    properly and adequately assess the need and justification for use of force against Mr.

9    Padilla;" and 3) "engaged in overly aggressive and excessive use of force against Mr. Padilla

10   . . ." ECF No. 37, ¶ 88.

11        Whether a duty is owed to Plaintiff is a question of law. *Scialabba v. Brandise Const.*

12   *Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996). If Plaintiff is asserting that ADAMS owed him a

13   duty to conduct a competent investigation and there was a breach of that duty, there does

14   not appear to be such a claim available under Nevada law. Further, other jurisdictions do

15   not recognize a claim for negligent investigation. *See Dever v. Fowler*, 816 P.2d 1237, 1242

16   (Wash.Ct.App. 1991) ("[H]olding investigators liable for their negligent acts would impair

17   vigorous prosecution and have a chilling effect upon law enforcement."). *See also Smith v.*

18   *State*, 324 N.W.2d 299, 300 (Iowa 1982) ("Plaintiffs have cited no authority, nor have we

19   found any, which recognizes an independent tort for negligent investigation of crime by law

20   enforcement officers."). *See also Wimer v. State*, 841 P.2d 453, 455 (Idaho Ct. App. 1992)

21   ("Plaintiffs have cited to us no cases from Idaho or any other jurisdiction recognizing the

22   tort of negligent investigation of a crime.").

23        If Plaintiff is asserting that ADAMS owed him a duty to not engage in overly

24   aggressive and excessive use of force against him and there was a breach of that duty, the

25   factual allegations of Plaintiff's complaint make clear that other individuals, not ADAMS,

26   applied force to Plaintiff. Thus, there is no basis to conclude that ADAMS breached any

27   duty he might have owed toward Plaintiff.

28        Plaintiff's allegations also fail to sufficiently allege that ADAMS was the legal

causation of Plaintiff's injuries. "To demonstrate legal or proximate cause, a party must show that the defendant could have foreseen that his or her negligent conduct could have caused a particular variety of harm to a certain type of plaintiff." *Lawrence v. Las Vegas Metro. Police Dep't*, 451 F. Supp. 3d 1154, 1173 (D. Nev. 2020) (citing *Sims v. Gen. Tel. & Elecs.*, 815 P.2d 151, 156 (Nev. 1991) *overruled on other grounds by Tucker v. Action Equip. & Scaffold Co.*, 951 P.2d 1027 (Nev. 1997)).

With Plaintiff's allegations, to be successful on a negligence claim against ADAMS, it must be foreseeable that, when STEVENSON, with legal justification, placed handcuffs on Plaintiff in ADAMS' presence, that Plaintiff would be harmed in the form Plaintiff alleges to have suffered – e.g. the need for medical attention (ECF No. 37, at ¶¶ 57 and 61) and that he now allegedly has a permanent and irreversible condition affecting his livelihood (*Id.* at ¶ 62). Such a harm could not be foreseeable though given that 1) ADAMS is not alleged to have arrested and handcuffed Plaintiff; 2) ADAMS is not alleged to have been aware that the handcuffs placed on Plaintiff were too tight; or 3) ADAMS is not alleged to have been aware that Plaintiff was suffering pain from the handcuffs.

Plaintiff's Complaint fails to sufficiently state a claim for negligence against ADAMS. Therefore, Plaintiff's negligence claim against ADAMS should be dismissed.

### 2. Battery

"A battery is an intentional and offensive touching of a person who has not consented to the touching." *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (Nev. 2016) (citations omitted). *See also* RESTATEMENT (SECOND) TORTS § 13 (1965) ("An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.").

As the allegations of Plaintiff's Complaint make clear, ADAMS did not grab or handcuff Plaintiff, so Plaintiff's allegations do not make out a claim for battery. ECF No. 37, ¶ 32. *See* RESTATEMENT (SECOND) TORTS § 14 (1965) ("To make the actor liable for a

battery, the harmful bodily contact must be caused by an act done by the person whose liability is in question.").

Without an allegation that ADAMS intentionally and offensively touched Plaintiff, a battery claim cannot be sustained against him. Therefore, Plaintiff's battery claim against ADAMS should be dismissed for failure to state a claim upon which relief can be granted.

### 3. False Imprisonment

"False imprisonment is a restraint of one's liberty without any sufficient cause therefor." *Lerner Shops of Nev., Inc. v. Marin*, 423 P.2d 398, 400 (Nev. 1967) (citations omitted). Further, "[t]o establish false imprisonment of which false arrest is an integral part, it is only necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification therefore." *Marschall v. City of Carson*, 464 P.2d 494, 497 (Nev. 1970).

Plaintiff's Complaint cannot be construed to sufficiently allege a false imprisonment claim against ADAMS. As discussed above and based on the allegations contained in Plaintiff's Complaint, legal authority and probable cause existed to arrest and handcuff Plaintiff for a violation of NRS 465.070. Therefore, legal cause and justification existed to restrain Plaintiff's liberty.

Plaintiff's cause of action for false imprisonment should be dismissed for failure to state a claim upon which relief can be granted.

### 4. Adams is Entitled to NRS 41.032 Immunity

Even if Plaintiff's allegations were sufficient to support his state law tort claims, ADAMS is entitled to immunity pursuant to NRS 41.032. NRS 41.032 precludes suits based on officials exercising discretion. *Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998). NRS 41.032 states in relevant part:

> [N]o action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is:
> * * *

2.  Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

The Nevada Supreme Court recently clarified the analysis of NRS 41.032(2) and discretionary immunity in *Martinez v. Maruszczak*, 168 P.3d 720 (Nev. 2007). In *Martinez*, the court, recognizing the similarities between NRS 41.032 and the Federal Tort Claims Act[5], adopted the *Berkovitz-Gaubert* discretionary function immunity test ("B-G Test") as set forth in *United States v. Gaubert*, 499 U.S. 315 (1991). *Martinez*, 168 P.3d at 729. The B-G Test provides a state actor with discretionary immunity when a decision "(1) involve[s] an element of individual judgment or choice and (2)... [is] based on considerations of social, economic, or political policy." *Id*. As examined below, the decisions and actions of ADAMS, as set out in Plaintiff's Complaint, involved elements of individual judgment and/or choice and were based on social, economic, and/or political policy.

### a.  Adams' Actions Involved Elements of Individual Judgment or Choice

The first criterion of the B-G Test is that the decision must involve an element of individual judgment or choice. *Id*. The Nevada Supreme Court has defined a "discretionary act" as "an act that requires a decision requiring personal deliberation." *University of Nevada Reno v. Stacey*, 997 P.2d 812, 816 (Nev. 2000) (*citing Parker v. Mineral County*, 729 P.2d 491, 493 (Nev. 1986)). *See also Foster v. Washoe Cnty.*, 964 P.2d 788, 792 (Nev. 1998) (quoting *Pittman v. Lower Court Counseling*, 871 P.2d 953, 956 (Nev. 1994) ("A ministerial act is an act performed by an individual in a prescribed legal manner in accordance with law, without regard to, or the exercise of, the judgment of the individual.").

There are numerous examples of acts involving individual judgment or choice. A physician's diagnostic and treatment decisions satisfy the first B-G Test criterion. *Martinez*, 168 P.3d at 729. A state trooper's decisions to stop a person, make conclusions about the person's legal violations, and arrest the person involve elements of judgment and

---

[5] See 28 U.S.C. § 2680.

choice. *Ortega*, 953 P.2d at 23. Notably, when a Gaming Control Board agent handcuffs and chains a person in order to detain him, without probable cause, the agent is making a judgment or choice in exercising his discretion. *See Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 878 (9th Cir. 2002). The exercise of broad statutory authority involves a "great 'element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 329 (1991) (*quoting Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). ADAMS' actions, as alleged in Plaintiff's Complaint, meet the first criterion of the B-G Test.

ADAMS exercised judgment in his actions during his and STEVENSON's interactions with Plaintiff in the MGM holding cell including the decision to not intervene when STEVENSON handcuffed and arrested Plaintiff. The course of action ADAMS chose to take or not take was not prescribed. With the information available to ADAMS, who is given the broad authority to use his judgment in making decisions during the course of his and other NGCB agents interactions with suspects, exercised his judgment based on the facts available to him.

### b.    ADAM'S Actions Involved Social, Economic, and/or Political Policy Considerations

The second criterion of the B-G Test is that the decision must be based on considerations of social, economic, or political policy. *Martinez*, 168 P.3d at 729. The focus of inquiry under the second criterion is not on an agent's intent but is on whether the actions "are susceptible to a policy analysis." *Martinez*, 168 P.3d at 728 (quoting *Gaubert*). "Discretionary conduct is not confined to the policy or planning level." *Gaubert*, 499 U.S. at 325. Further, "the court need not determine that a government employee made a conscious decision regarding policy considerations in order to satisfy the test's second criterion." *Martinez*, 168 P.3d at 728. Decisions undertaken for policy reasons of primary concern to a regulatory agency satisfy the second criterion of the B-G Test. *Gaubert*, 499 U.S. at 332. "[I]f the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped,

immunity will likely attach under the second criterion." *Martinez*, 168 P.3d at 729. Finally, the U.S. Supreme Court, through *Gaubert*, has instructed that "when established government policy, as expressed or implied by statute, regulation or agency guidelines allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

ADAMS' actions, as alleged in Plaintiff's Complaint, also meet the second criterion of the B-G Test. The NGCB and its agents "are charged with the awesome responsibility of regulating the gaming industry in Nevada and keeping undesirable elements out of the gaming industry." *Rosenthal v. Nevada*, 514 F.Supp. 907, 914 (D. Nev. 1981). Pursuant to NRS 463.0129, the Nevada Legislature has declared, as the public policy of this state, that the gaming industry is vitally important to the economy of the state and the general welfare of its inhabitants, that the continued growth and success of gaming is dependent upon the public confidence and trust that licensed gaming is conducted honestly, competitively, and free from criminal and corruptive elements, and that public confidence and trust can be maintained only by the strict regulation of all persons, locations, practices, associations, and activities related to the operation of license gaming establishments.

In order to carry out the social, economic, and political policy objectives announced in NRS 463.0129, the NGCB and its agents have been charged with investigating criminal violations under the Gaming Control Act including NRS chapter 465 involving gaming related crimes. Further, NRS 179.124 provides that peace officers, such as ADAMS and STEVENSON, have discretion to make arrests for felonies[6]. ADAMS' actions, as alleged in Plaintiff's Complaint, are clearly susceptible to a policy analysis under the preceding law.

ADAMS, who is informed by the MGM that Plaintiff stole a $25 casino chip while playing craps and does not intervene when STEVENSON lawfully arrests and handcuffs Plaintiff, is recognizing and exercising the state's significant policy interests. The NGCB and its agents must constantly consider their responsibility to help ensure that licensed

---

[6] Pursuant to NRS 289.360, ADAMS is a peace officer given his status as an agent of the NGCB.

gaming is conducted honestly, competitively and free from criminal elements. Finding liability under the alleged facts would jeopardize and hinder the NGCB's ability to keep the gaming industry free from criminal and corruptive elements. ADAM'S actions, as alleged by Plaintiff, involved judgment that was grounded in policy considerations regarding the enforcement of criminal laws related to gaming.

The first and second criterion of the B-G Test are satisfied, and ADAMS is entitled to discretionary immunity. Thus, Plaintiff's state law claims, to the extent they are viable, should be dismissed.

## III.  CONCLUSION

Plaintiff's causes of action against ADAMS should be dismissed for the following reasons: 1) ADAMS did not violate 42 U.S.C. § 1983; 2) ADAMS is entitled to qualified immunity; 3) Plaintiff has failed to sufficiently allege a cause of action for negligence, battery or false imprisonment against ADAMS; and 4) ADAMS is entitled to discretionary immunity. ADAMS respectfully requests that his Motion to Dismiss be granted for failure to state claims for relief upon which relief may be granted.

DATED this 27th day of February, 2024.

AARON D. FORD
Attorney General

By: /s/ Michael P. Somps
　　Michael P. Somps (Bar No. 6507)
　　Senior Deputy Attorney General

*Attorneys for Kevin Adams*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on February 27, 2024 I filed the **MOTION TO DISMISS SECOND AMENDED COMPLAINT** via this Court's electronic filing system. Parties that are registered with this Court's CM/ECF Electronic Filing will be served electronically.

/s/ Angelica Collazo
Angelica Collazo, an employee of
the office of the Nevada Attorney General