1
2
3
4
5
6                           UNITED STATES DISTRICT COURT
7                                  DISTRICT OF NEVADA
8                                        * * *
9    SHAWN PADILLA,                                  Case No. 2:22-cv-02109
10                       Plaintiff,                              **ORDER**
11          v.
12   NEVADA GAMING CONTROL BOARD,
     *et. al.*,
13
14                       Defendants.

15
16        **I.      INTRODUCTION**
17            Before the Court are Defendants Kevin Adam and Andrew Stevenson's motions to dismiss
18   the Second Amended Complaint (ECF Nos. 49, 55). For the reasons stated below, the Court denies
19   Defendant Stevenson's Motion to Dismiss. The Court grants in part and denies in part Defendant
20   Adam's Motion to Dismiss.
21        **II.     PROCEDURAL BACKGROUND**
22            Plaintiff Shawn Padilla commenced this case by filing a Complaint on December 20, 2022,
23   against Defendant MGM Grand Hotel, LLC ("MGM") and the Nevada Gaming Control Board
     ("the Board"). ECF No. 1. On March 15, 2023, Mr. Padilla filed his First Amended Complaint.
24   ECF No. 16. On April 4, the Board filed an unopposed joint motion to dismiss the Board with
25   prejudice. ECF No. 19. The Court granted the motion on April 12. ECF No. 20. On May 5, 2023,
26   Mr. Padilla filed a motion for leave to file a Second Amended Complaint ("SAC"), but it was
27   denied as Mr. Padilla's counsel had failed to first meet and confer with MGM's counsel. ECF Nos.
28

23, 24. Following a conference on May 9, 2023, Mr. Padilla filed a renewed motion for leave to file the SAC on May 15, 2023. ECF No. 26. It was fully briefed by June 2, 2023. ECF Nos. 31, 32. On January 12, 2024, the Court entered an Order adopting a Report and Recommendation that granted Mr. Padilla's motion for leave to file the SAC. ECF No. 36. On January 24, 2024, Mr. Padilla filed the SAC, naming Defendant Adams and Defendant Stevenson in their individual capacities. ECF No. 37. On February 27, 2024, Mr. Adams filed his instant motion to dismiss the SAC. ECF No. 49. The motion was fully briefed by March 19, 2024. ECF Nos. 51, 52. On May 6, 2024, Mr. Stevenson filed his instant motion to dismiss. ECF No. 55. The motion was fully briefed by May 28, 2024. ECF Nos. 57, 59. This Order follows.

## III.    FACTUAL ALLEGATIONS

The following allegations are taken from the Second Amended Complaint.

On or around December 26, 2020, Plaintiff Mr. Padilla and his family checked in as hotel guests of MGM. Mr. Padilla went to the casino floor to play craps for several hours. After doing so, he returned to his room. At or around 4 a.m., he was woken up by knocking on the door. Six MGM security officers asked that he accompany them to the security office to meet with Board officers to discuss a theft that took place at the craps table. MGM had allegedly contacted the Board regarding the theft, resulting in the dispatch of Board agents Mr. Adams and Mr. Stevenson to MGM.

MGM security officers placed Mr. Padilla in a holding cell located in MGM's security office for ten minutes before Defendants Mr. Stevenson and Mr. Adams entered. Mr. Stevenson ordered Mr. Padilla to stand up, turn around, and put his hands behind his back. He then grabbed Mr. Padilla, handcuffed him, and mirandized him. He also stated that Mr. Padilla was under arrest for stealing a $25 casino chip while playing craps. Mr. Padilla denied the theft and was questioned by Mr. Adams about what he was wearing while playing craps and whether he had been drinking. Mr. Adams and Mr. Stevenson then left Mr. Padilla handcuffed in the holding cell in agonizing pain and discomfort from overly tight handcuffs.

After the agents left, Mr. Padilla pounded his head on the door in order to seek assistance. An MGM security officer located outside the door asked him what was wrong. Mr. Padilla said

1   that the handcuffs were causing pain. He was told to wait until the Board agents returned. Mr.

2   Padilla again pounded his head on the door in order to have the handcuffs loosened. No relief was

3   provided.

4          Soon thereafter, a person identifying himself as part of MGM's security department, along

5   with Mr. Adams, and another Board agent, who is not part of this case, re-entered the room. Mr.

6   Adams told Mr. Padilla that the surveillance video revealed that "it was not you [Padilla] who stole

7   a gaming chip, but rather another person." The handcuffs were removed and he was accompanied

8   back to his family. He was informed that the identifying characteristics of the person who

9   committed the theft were that they were drunk and belligerent, an "older white man," and wearing

10  a hat. Mr. Padilla was sober, is Hawai'ian, and was not wearing a hat. Mr. Adams expressed that

11  he "knew they had the wrong guy." Mr. Padilla went to the hospital for an examination. Following

12  Mr. Padilla's return to Hawai'i, he continued to seek medical care.

13         **IV.    LEGAL STANDARD**

14         An initial pleading must contain "a short and plain statement of the claim showing that the

15  pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure

16  to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion

17  to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and

18  are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs.,

19  Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

20         To survive a motion to dismiss, a complaint need not contain "detailed factual allegations,"

21  but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements

22  of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

23  v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains

24  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

25  meaning that the court can reasonably infer "that the defendant is liable for the misconduct

26  alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on

27  the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive

28  dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences

1    from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S.

2    Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

3           **V.    DISCUSSION**

4          The Court now turns to the merits of the motions. Defendants Mr. Adams and Mr.

5    Stevenson separately move to dismiss Plaintiff Mr. Padilla's SAC for failure to state claims upon

6    which relief may be granted. Fed. R. Civ. P. 12(b)(6). The SAC alleges the following causes of

7    action against Mr. Adams and Mr. Stevenson: (Cause of Action I) violation of 42 U.S.C. § 1983;

8    (Cause of Action II) negligence; (Cause of Action III) battery; (Cause of Action V) false

9    imprisonment. In their Motions to Dismiss, Mr. Adams and Mr. Stevenson make four arguments.

10   First, they argue that Mr. Padilla has failed to sufficiently allege a Section 1983 cause of action.

11   Second, they claim that they are entitled to qualified immunity, thus foreclosing the Section 1983

12   claim. Third, Mr. Adams and Mr. Stevenson argue that, for each of the three state law causes of

13   action, Mr. Padilla has failed to state a claim. Fourth, they claim that they are entitled to

14   discretionary immunity, which forecloses the state law claims. The Court considers each argument

15   in turn.

16                 **A. Cause of Action I: Violation of 42 U.S.C. § 1983**

17         Mr. Adams and Mr. Stevenson assert that Mr. Padilla's Section 1983 claim should be

18   dismissed because he failed to adequately allege that he was subject to excessive force or an

19   unlawful arrest in violation of his Fourth Amendment rights. The Court disagrees.

20         Section 1983 creates a cause of action "against any person acting under color of law who

21   deprives another of any rights, privileges, or immunities secured by the Constitution and laws of

22   the United States." Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003).

23   Mr. Padilla alleges that Mr. Adams and Mr. Stevenson violated his Fourth, Fifth, and Fourteenth

24   Amendment rights, as well as Article I of the Nevada Constitution. The SAC mentions, in general

25   language, a due process violation and Mr. Padilla's response to the Motion to Dismiss briefly

26   discusses an equal protection claim. However, the bulk of the SAC alleges that Mr. Padilla was

27   wrongfully detained, considering the video surveillance revealed that he was not the thief, and that

28   he was aggressively handcuffed by Mr. Stevenson, resulting in lasting damage. The Court finds

1    that, in this context, the gravamen of this case concerns Mr. Padilla's claim that his arrest and tight

2    handcuffing violated the Fourth Amendment's prohibition on a warrantless arrest without probable

3    cause and the use of excessive force.

4                                    **i.   <u>Unlawful Arrest</u>**

5            Mr. Padilla alleges that he was arrested without lawful justification. An unlawful arrest

6    claim is cognizable under Section 1983 as a violation of the Fourth Amendment. <u>Atwater v. City</u>

7    <u>of Lago Vista</u>, 532 U.S. 318, 354 (2001). "Under the Fourth Amendment, a warrantless arrest

8    requires probable cause." <u>United States v. Lopez</u>, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable

9    cause for a warrantless arrest arises when the facts and circumstances within the officer's

10   knowledge are sufficient to warrant a prudent person to believe that the suspect has committed . .

11   . . an offense." <u>Crowe v. County of San Diego</u>, 608 F.3d 406, 432 (9th Cir. 2010) (internal

12   quotation and citation omitted). In determining whether there was probable cause to arrest, a court

13   must look to "the totality of circumstances known to the arresting officers, [to determine if] a

14   prudent person would have concluded there was a fair probability that [the defendant] had

15   committed a crime." <u>Id.</u> (quoting <u>United States v. Smith</u>, 790 F.2d 789, 792 (9th Cir. 1986)).

16           In establishing probable cause, "officers may not solely rely on the claim of a citizen

17   witness that he was a victim of a crime, but must independently investigate the basis of the witness'

18   knowledge or interview other witnesses." <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d

19   912, 925 (9th Cir. 2001); <u>see also</u> <u>Fuller v. M.G. Jewelry</u>, 950 F.2d 1437, 1444 (9th Cir. 1991)

20   ("[P]olice officers ha[ve] a duty to conduct an investigation into the basis of [a] witness' report").

21   For example, in <u>Hopkins v. Bonvicino</u>, officers arrested Hopkins "based solely on the information

22   they obtained from [a witness]—namely, that she had been involved in an extremely minor car

23   accident with Hopkins, that she smelled alcohol on his breath, and that he appeared intoxicated.

24   The officers did not inspect Hopkins' car to see if the hood was still warm . . . . nor did they inspect

25   the vehicle for any evidence[.]" 573 F.3d 752, 767 (9th Cir. 2009). The Ninth Circuit concluded

26   that the witness' "cursory and conclusory" statements "without further investigation by the police,"

27   were "insufficient to support probable cause." <u>Id.</u>

28           Viewing the facts in the SAC in a light most favorable to Mr. Padilla, he has sufficiently

alleged that Mr. Adams and Mr. Stevenson lacked probable cause to arrest him. As alleged in the SAC, the facts upon which Mr. Adams and Mr. Stevenson relied to arrest Mr. Padilla were solely those provided to them by MGM. MGM reported to the Board that Mr. Padilla had been detained for allegedly stealing a $25 casino chip, which constitutes a felony under Nevada Revised Statutes 465.070(3). Upon that information, Mr. Adams and Mr. Stevenson arrested Mr. Padilla. This arrest occurred despite the existence of a surveillance video, which allegedly revealed that Mr. Padilla was not the thief. The arrest occurred at or around 4 a.m., hours after the alleged theft, and while Mr. Padilla was still on MGM's property, where he had been sound asleep. These facts do not suggest that there was any kind of emergency that could justify an arrest before conducting a basic review of existing evidence. In the SAC, Mr. Padilla states that, following his arrest, Mr. Adams and Mr. Stevenson left to further investigate. Upon Mr. Adams' return to the holding cell, Mr. Padilla was told that the security footage revealed he was innocent. Essentially, once the officers reviewed the footage, he was released. Thus, Mr. Adams and Mr. Stevenson are alleged to have arrested Mr. Padilla without first engaging in any due diligence to support probable cause, such as reviewing the video. Instead, they only investigated MGM's claim after the arrest.

In sections of the Responses and Replies to the Motions to Dismiss, the parties raise the possibility that Mr. Adams and Mr. Stevenson did review the video before engaging in the arrest. Even if Mr. Adams and Mr. Stevenson did review the video before arresting Mr. Padilla, they lacked probable cause for that arrest. If they saw the video, which showed an older, white, drunk individual, as alleged in the SAC, and then saw Mr. Padilla in the holding cell, who was younger, Hawai'ian, and sober, they clearly lacked probable cause to proceed with arresting him. See Lopez, 482 F.3d at 1073 ("In some instances there may initially be probable cause justifying an arrest, but additional information obtained at the scene may indicate that there is less than a fair probability that the [individual] has committed or is committing a crime. In such cases, execution of the arrest or continuation of the arrest is illegal.") As alleged in the SAC, the individual in the video did not remotely resemble Mr. Padilla. If Mr. Adams and Mr. Stevenson had seen the footage before meeting Mr. Padilla, they then lacked probable cause to arrest him once they saw him and saw that he did not match the person in the video.

If the Board agents reviewed the video only after arresting Mr. Padilla, as alleged in the SAC, then the basis for probable cause remains MGM's report. Mr. Padilla sufficiently alleges that MGM's report, without any further investigation or independent corroboration, was not sufficient to justify Mr. Padilla's arrest. Therefore, dismissal of Mr. Padilla's Section 1983 claim based upon unlawful arrest is denied.

### ii. Excessive Force

Mr. Padilla alleges that Mr. Stevenson used excessive force when handcuffing him. Claims of excessive force are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 397 (1989). When determining whether the totality of the circumstances justifies the degree of force, the court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397 (citations omitted). In determining whether a particular use of force is reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests." Id. at 396 (citation omitted).

The Court finds that Mr. Padilla has pleaded facts sufficiently alleging that Mr. Stevenson used an unreasonable amount of force in handcuffing Mr. Padilla. According to Mr. Padilla, Mr. Stevenson placed Mr. Padilla in handcuffs. The mere act of placing Mr. Padilla in handcuffs during the course of an arrest does not, in and of itself, amount to excessive force. The Supreme Court has recognized that the right to make an arrest carries with it the right to use "some degree of physical coercion or threat[.]" Id. However, the SAC also alleges that Mr. Stevenson employed overly restrictive handcuffs, with Mr. Padilla's "hands tightly hand-cuffed behind his back and in dire pain." Mr. Padilla attests that he still suffers from damage caused by the handcuffs. The SAC further alleges that Mr. Stevenson kept Mr. Padilla painfully handcuffed while he left to continue the investigation. During that indeterminate period, Mr. Padilla twice asked for relief from the

1    restrictive handcuffs. The Ninth Circuit has held that such tight handcuffing can constitute

2    excessive force. See Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) ("It is well-

3    established that overly tight handcuffing can constitute excessive force.").

4           In response, Mr. Adams and Mr. Stevenson emphasize that the crime of which Mr. Padilla

5    was accused constituted a felony. However, it was nonviolent. See Meredith v. Erath, 342 F.3d

6    1057, 1061 (9th Cir. 2003) (finding that the officer "was investigating income tax related crimes,

7    which (although felonies) are nonviolent offenses" and that a "reasonable jury could find that [the

8    officer] used an unreasonable amount of force in handcuffing [plaintiff]"). Mr. Padilla presented

9    no safety risk. He was already confined in a holding cell when Mr. Stevenson and Mr. Adams first

10   engaged with him. He did not resist the arrest. As alleged in the SAC, he responded to Mr.

11   Stevenson's order to stand up, turn around, and to put his hands behind his back. He had also

12   complied with the six MGM security officers who had accompanied him to the holding cell. In

13   these circumstances, Mr. Padilla has sufficiently alleged that it was objectively unreasonable for

14   Mr. Stevenson to keep Mr. Padilla restrained in painful handcuffs while he left to further

15   investigate.

16          In their Motions to Dismiss, Mr. Adams and Mr. Stevenson argue that Mr. Padilla's

17   excessive force claim fails because they had no knowledge of the overly tight or painful handcuffs.

18   They construe the SAC as alleging only that Mr. Padilla complained to MGM security about the

19   handcuffs and Mr. Adams and Mr. Stevenson remained unaware that the handcuffs were too tight.

20   Taking the facts as alleged in the SAC, the Court finds that the Board agents could have been

21   aware of the tight handcuffs. According to Mr. Padilla, Mr. Stevenson "physically grabbed" and

22   "aggressively handcuffed" him. Soon after, the Board agents left him in this condition. The SAC

23   further alleges that Mr. Padilla loudly and repeatedly sought assistance from anyone within

24   hearing, including banging his head on the door. Mr. Adams and Mr. Stevenson could have been

25   aware of his condition, either through the initial aggressive handcuffing, because they were within

26   hearing, or because they were informed of Mr. Padilla's complaints by MGM security.

27          Even if Mr. Adams and Mr. Stevenson were not made aware of the tightness of the

28   handcuffs, Mr. Padilla has still sufficiently pleaded the claim. In cases where the Ninth Circuit has

held that excessively tight handcuffing can constitute a Fourth Amendment violation, plaintiffs *either* were demonstrably injured by the handcuffs *or* their complaints about the handcuffs being too tight were ignored by the officers. See Reyes v. City of Santa Ana, 832 F. App'x 487, 491 (9th Cir. 2020) (finding that, in cases where the court held tight handcuffing constituted a Fourth Amendment violation, "the plaintiff suffered more than nominal injuries from their handcuffs, *or* complained to police about tight handcuffs, only to have their requests for loosening ignored") (emphasis added)); Wall, 364 F.3d at 1112 (holding overly tight handcuffing can constitute excessive force when it causes injury *or* where officers ignore plaintiff's complaints about the handcuffs being too tight) (emphasis added)); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (denying summary judgment as the officer "has presented no evidence that would justify handcuffing [the plaintiff] so tightly that he suffered pain and bruises, *or* to justify his refusal to loosen the handcuffs after [the plaintiff] complained of the pain") (emphasis added)). Here, Mr. Padilla has alleged a physical manifestation of injury. Mr. Padilla has also alleged that he did complain about tight handcuffs. Even if, as Mr. Adams and Mr. Stevenson argue, they were somehow unaware of these complaints, Mr. Padilla can maintain an excessive force claim alleging that the tight handcuffs caused more than nominal injuries.

At this pleading stage, a plaintiff need only allege facts that would give rise to a reasonable inference that he is entitled to relief. Mr. Padilla claims to have sought medical treatment for injuries sustained as a result of Mr. Stevenson's conduct. The SAC states that he complained about tight handcuffs and was ignored. Mr. Padilla's assertion that Mr. Stevenson acted unreasonably and in violation of his constitutional rights by forcefully handcuffing him and leaving him for an unspecified amount of time is sufficient for pleading purposes to state a Section 1983 claim for excessive force. Accordingly, Mr. Stevenson's motion to dismiss Mr. Padilla's excessive force claim is denied. However, as Mr. Adams is not alleged to have placed Mr. Padilla in handcuffs, his motion to dismiss this claim is granted.

### B.  Qualified Immunity

Mr. Adams and Mr. Stevenson assert that they are both entitled to qualified immunity. "Qualified immunity protects government officials from civil damages 'insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Chappell v. Mandeville, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is an immunity from suit rather than a defense to liability, and it "ensures that 'officers are on notice their conduct is unlawful' before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Tarabochia, 766 F.3d at 1125 (brackets in original omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." Green v. City and Cnty. of San Francisco, 751 F.3d 1039, 1052 (9th Cir. 2014). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (brackets in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. Further, the right must be defined at "the appropriate level of generality . . . [, and the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also Ashcroft, 563 U.S. at 741-42.

For the reasons stated above, the Court has already found that Mr. Padilla has sufficiently alleged that Mr. Adams and Mr. Stevenson violated Mr. Padilla's Fourth Amendment right by engaging in an unlawful arrest and that Mr. Stevenson violated his right to be free from excessive

1    force, therefore meeting the first prong of the test. Since Mr. Padilla's allegations adequately state

2    a constitutional injury, the Court must determine whether that constitutional right was clearly

3    established, at the time of the violation, to put Mr. Adams and Mr. Stevenson on notice that their

4    conduct was clearly unlawful. <u>Robinson</u>, 278 F.3d at 1015. The Court finds that it was.

5         In regard to the claim for unlawful arrest, "[i]t is well established that 'an arrest without

6    probable cause violates the Fourth Amendment and gives rise to a claim for damages under §

7    1983.'" <u>Rosembaum v. Washoe County</u>, 663 F.3d 1071, 1076 (9th Cir. 2011) (citing <u>Borunda v.</u>

8    <u>Richmond</u>, 885 F.2d 1384, 1391 (9th Cir. 1988)). However, if an officer makes an arrest without

9    probable cause, the officer may nonetheless be entitled to qualified immunity, if he reasonably

10   believed there to have been probable cause. <u>Ramirez v. City of Buena Park</u>, 560 F.3d 1012, 1024

11   (9th Cir. 2009). "An officer has probable cause to make a warrantless arrest when the facts and

12   circumstances within his knowledge are sufficient for a reasonably prudent person to believe that

13   the suspect has committed a crime." <u>Rosembaum</u>, 663 F.3d at 1076 (citing <u>Crowe</u>, 608 F.3d at

14   432). According to the SAC, the information Mr. Adams and Mr. Stevenson possessed at the time

15   of Mr. Padilla's arrest was, at most, that a theft had occurred at MGM. At the time of the arrest,

16   the Board agents had allegedly failed to further investigate this claim or view the security footage

17   of the theft. "A reasonable police officer would have made further inquiry before effecting a

18   warrantless arrest." <u>Merriman v. Walton</u>, 856 F.2d 1333, 1335 (9th Cir. 1988) (finding defendant

19   was not entitled to qualified immunity for wrongful arrest); <u>see also</u> <u>Hutchinson v. Grant</u>, 796 F.2d

20   288, 290 (9th Cir. 1986) (police officer who mistook arrestee for a burglary suspect was not

21   entitled to summary judgment in connection with arrest where he took no steps to verify the

22   arrestee's identity before arresting him). The Court finds that, as alleged in the SAC, Mr. Adams

23   and Mr. Stevenson's conduct violated a clearly established right.

24        With respect to the excessive force claim, it is clearly established that overly tight

25   handcuffs can constitute excessive force under the Fourth Amendment. <u>See</u> <u>LaLonde v. County of</u>

26   <u>Riverside</u>, 204 F.3d 947, 960 (9th Cir. 2000) ("A series of Ninth Circuit cases has held that tight

27   handcuffing can constitute excessive force."); <u>Hansen v. Black</u>, 885 F.2d 642, 645 (9th Cir. 1989)

28   ("[T]he officers used excess force on [plaintiff] by unreasonably injuring her wrist and arm as they

handcuffed her."); <u>Meredith</u>, 342 F.3d at 1061 ("[A] reasonable jury could find that [defendant] used an unreasonable amount of force in handcuffing her and as a result violated her Fourth Amendment rights."). Consequently, the Court finds that a reasonable officer would have been aware that placing Mr. Padilla in excessively tight handcuffs that resulted in physical manifestations of injury, as Mr. Padilla has here alleged, can constitute excessive force. Therefore, Mr. Adams and Mr. Stevenson's Motions to Dismiss Mr. Padilla's claim based on qualified immunity are denied.

### C. Causes of Action II, III, and V: State Law Claims

Mr. Padilla's SAC also alleges three state law tort causes of action against Mr. Adams and Mr. Stevenson: (1) negligence, (2) battery, and (3) false imprisonment. Mr. Adams and Mr. Stevenson allege that Mr. Padilla has failed to adequately allege each claim. For the following reasons, the Court disagrees.

### i.   Cause of Action II: Negligence

"It is well established that to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." <u>Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.</u>, 221 P.3d 1276, 1280 (Nev. 2009). In the SAC, Mr. Padilla alleges that Mr. Stevenson and Mr. Adams' negligence includes "their failure to properly and adequately assess the need and justification for use of force against Mr. Padilla" and that the Board agents "wrongfully engaged in an overly aggressive and excessive use of force against Mr. Padilla." Generally, "state officials have a duty to exercise ordinary care in performing their duties." <u>Butler ex rel. Biller v. Bayer</u>, 168 P.3d 1055, 1065 (Nev. 2007). It is also well established that "police officers unquestionably owe a duty of care to the general public." <u>Vasquez-Brenes v. Las Vegas Metro. Police Dep't</u>, 51 F. Supp. 3d 999, 1014 (D. Nev. 2014). The SAC sufficiently alleges a breach of this duty through Mr. Stevenson's act of placing Mr. Padilla in excessively tight handcuffs. In the motions to dismiss, the Board agents argue that it was not foreseeable that Mr. Padilla would suffer any harm due to the handcuffing. However, Mr. Padilla has sufficiently alleged facts that Mr. Stevenson's "aggressive handcuff[ing]" could foreseeably lead to harm. Mr. Adams, on the other hand, did not place Mr. Padilla in handcuffs and Mr. Padilla

1    has not sufficiently alleged how he breached his duty of care. Accordingly, Mr. Padilla has only

2    sufficiently pleaded the elements of a negligence claim as it pertains to Mr. Stevenson. Mr.

3    Stevenson's motion to dismiss for failure to state a negligence claim is denied. Mr. Adam's motion

4    to dismiss this claim is granted.

5                            ii.    **Cause of Action III: Battery**

6           "A battery is an intentional and offensive touching of a person who has not consented to

7    the touching." Humboldt Gen. Hosp. v. Sixth Judicial Dist. Court, 376 P.3d 167, 171 (Nev. 2016)

8    (citations omitted). A police officer is privileged to use the amount of force reasonably necessary.

9    Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (citations omitted). However, under Nevada

10   law, an officer who uses more force than is reasonably necessary is liable for battery. See Yada v.

11   Simpson, 913 P.2d 1261, 1262 (Nev. 1996). As discussed above, Mr. Padilla has sufficiently

12   alleged that the tight handcuffing constituted excessive force. As a result, he has sufficiently

13   pleaded this claim. However, Mr. Padilla indicates that the allegations of battery are based upon

14   the "physically grabbing and forcefully handcuffing" of his person. Mr. Adams is not alleged to

15   have engaged in any grabbing or handcuffing. As such, Mr. Adam's motion to dismiss this claim

16   is granted. Mr. Stevenson's motion to dismiss for failure to state a battery claim is denied.

17                           iii.    **Cause of Action V: False Imprisonment**

18          Under Nevada law, false imprisonment occurs where a plaintiff's "liberty is restrained

19   under the probable imminence of force without any legal cause or justification." Jordan v. State ex

20   rel. DMV & Pub. Safety, 110 P.3d 30, 48 (Nev. 2005) (internal citation omitted). In the SAC, Mr.

21   Padilla pleads that the facts known to Mr. Stevenson and Mr. Adams, including the existence of

22   the security video, indicated that further investigation was warranted. As discussed above, in

23   consideration of Mr. Padilla's Fourth Amendment unlawful arrest claim, Mr. Padilla has alleged

24   facts sufficient to support an inference that his arrest was without probable cause, thereby

25   supporting an inference that his arrest was unlawful. Accordingly, to the extent that Mr. Padilla's

26   false imprisonment claim is based on the same facts supporting his Fourth

27   Amendment unlawful arrest claim, Mr. Adams and Mr. Stevenson's motions to dismiss for failure

28   to state a false imprisonment claim are denied.

### D.  Discretionary Immunity

Under Nevada Revised Statutes 41.032(2), no action can be brought against an officer or employee of the state or any of its agencies or political subdivisions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." A state actor raising this defense must show (1) that the questioned decision involved personal judgment, choice, or deliberation and (2) that the decision was based on considerations of social, economic, or political policy. Martinez v. Maruszczak, 168 P.3d 720, 722, 728-29 (Nev. 2007). There are two limitations on discretionary-act immunity. First, immunity does not attach for actions taken in bad faith. Falline v. GNLV Corp., 823 P.2d 888, 891 (Nev. 1991); Davis v. City of Las Vegas, 478 F.3d 1048, 1059 (9th Cir. 2007). Second, acts taken in violation of the Constitution cannot be considered discretionary. Mirmehdi v. United States, 689 F.3d 975, 984 (9th Cir. 2011); Nurse v. United States, 226 F.3d 996, 1002 (9th Cir. 2000). "[I]n general, governmental conduct cannot be discretionary if it violates a legal mandate." Nurse, 226 F.3d at 1002 (interpreting the FTC's discretionary function exception, which mirrors Nevada's discretionary-act immunity test). In Mirmehdi, the Ninth Circuit held that the decision of the U.S. Attorney General to detain an individual pending the outcome of immigration proceedings fell within the FTCA's discretionary function exception because the plaintiffs failed to "allege that this decision itself violated the Constitution." Mirmehdi, 689 F.3d at 984. In this case, unlike in Mirmehdi, Mr. Padilla has alleged that Mr. Adams and Mr. Stevenson's unlawful arrest and Mr. Stevenson's use of force—which are the basis for the state law claims— violated his constitutional rights. Accordingly, Mr. Adams and Mr. Stevenson's motions to dismiss Mr. Padilla's claims due to discretionary-act immunity are denied.

### VI.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Mr. Stevenson's Motion to Dismiss (ECF No. 55) is **DENIED**.

**IT IS FURTHER ORDERED** that Mr. Adam's Motion to Dismiss (ECF No. 49) is **GRANTED in part**. Cause of Action I's excessive force claim, Cause of Action II, and Cause of

Action III are **DISMISSED**. The motion is **DENIED in part**, as regards Cause of Action I's unlawful arrest claim and Cause of Action V.


        **DATED:** <u>September 29, 2024</u>

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**