1  Lawrence J. Semenza, III, Esq., Bar No. 7174
   Email: ljs@semenzarickard.com
2  Katie L. Cannata, Esq., Bar No. 14848
   Email: klc@semenzarickard.com
3  SEMENZA RICKARD LAW
   10161 Park Run Drive, Suite 150
4  Las Vegas, Nevada 89145
   Telephone: (702) 835-6803
5  Facsimile: (702) 920-8669

6

7  *Attorneys for Defendant MGM Grand Hotel, LLC*

8              **UNITED STATES DISTRICT COURT**

9                    **DISTRICT OF NEVADA**

10  SHAWN PADILLA, an individual,          Case No.   2:22-cv-02109-RFB-BNW

11                  Plaintiff,             **DEFENDANT MGM GRAND HOTEL,**
                                           **LLC'S *EMERGENCY* MOTION FOR**
12  v.                                     **PROTECTIVE ORDER AND**
                                           **MOTION TO QUASH SUBPOENA**
13  MGM GRAND HOTEL, LLC, a Nevada
    entity; ANDREW STEVENSON, an           **ORAL ARGUMENT REQUESTED**
14  individual (Doe 1); KEVEN ADAMS, an
    individual (Doe 2); JERIMIAH TIPTON, an
15  individual (Doe 3); DOES IV through X, and
    ROES I through X,
16
17                  Defendants.

18

19         Defendant MGM Grand Hotel, LLC ("MGM Grand") hereby files its Emergency Motion

20  for Protective Order and Motion to Quash Plaintiff Shawn Padilla's ("Plaintiff") Subpoena for

21  William Hornbuckle's Deposition (the "Motion").  As set forth below, the Subpoena was issued

22  solely to harass Mr. Hornbuckle, and as such, MGM Grand seeks a protective order prohibiting

23  Plaintiff from conducting his deposition.  In addition, MGM Grand further requests that the

24  Court quash the Subpoena in its entirety, and that a hearing be conducted relating to its Motion.

25  ///

26  ///

27  ///

28  ///

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

1

This Motion is made pursuant to Fed. R. Civ. P. 26(c), 37(a)(5) and LR 7-4 and is based upon the following Memorandum of Points and Authorities, the exhibits attached hereto, the declaration of counsel, the papers and pleadings on file herein, and any additional argument of counsel the Court may consider.

DATED this 23rd day of May 2025.

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

*Attorneys for Defendant MGM Grand Hotel, LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

**<u>DECLARATION OF LAWRENCE J. SEMENZA, III, ESQ. IN SUPPORT OF
DEFENDANT MGM GRAND HOTEL, LLC'S *EMERGENCY* MOTION FOR
PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA</u>**

I, LAWRENCE J. SEMENZA, III, state and declare as follows:

1.      I am a Shareholder with Semenza Rickard Law, counsel for Defendant MGM Grand Hotel, LLC ("MGM Grand").  I make the following Declaration in support of MGM Grand's Emergency Motion for Protective Order and Motion to Quash Plaintiff Shawn Padilla's ("Plaintiff") Subpoena for William Hornbuckle's Deposition (the "Motion").  I have personal knowledge of the facts contained in this Declaration and if called to do so, would testify competently thereto.

2.      On April 30, 2025, my firm received an e-mail from Plaintiff's counsel, Stephen Clough, Esq., noting – among other things – that Plaintiff intended to schedule the deposition of the CEO of MGM Resorts International ("MGM Resorts"), William Hornbuckle ("Mr. Hornbuckle").  In response, my colleague, Katie L. Cannata, Esq., stated that that MGM would object to any effort to depose Mr. Hornbuckle, given that he would not have any personal knowledge concerning Plaintiff's alleged incident.  Ms. Cannata further instructed Plaintiff's counsel that they were not to communicate directly, or indirectly, with Mr. Hornbuckle, and thereby requested that they refrain from attempting personal service of any subpoena.  Ms. Cannata further requested that Plaintiff's counsel provide our firm with any such documents for review to determine whether we could accept service. Plaintiff's counsel ignored my firm's request. A true and correct copy of the E-mail Correspondence Regarding Mr. Hornbuckle's Deposition is attached to the Motion as Exhibit 1.

3.      On May 8, 2025, Plaintiff issued a Subpoena for Deposition of Mr. Hornbuckle, along with a corresponding Notice of Deposition. As set forth in the Subpoena, Plaintiff scheduled Mr. Hornbuckle's deposition for May 29, 2025.  Mr. Hornbuckle's deposition was unilaterally scheduled without accounting for the parties' respective availability.   True and correct copies of the Subpoena and Notice of Deposition are attached to the Motion as Exhibits 2 and 3, respectively.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

4.      Given the May 29, 2025 deposition date, MGM Grand brings the instant Motion on an emergency basis.  In addition to the rapidly approaching deposition date, the nature of the emergency is straightforward: the Subpoena was clearly issued to harass Mr. Hornbuckle.  Mr. Hornbuckle is the CEO of MGM Resorts and has no relationship to the underlying incident at issue in this matter.  As an apex executive, Mr. Hornbuckle would not have any unique, personal knowledge concerning the topics set forth in the Subpoena, including (1) Plaintiff and/or his alleged incident, and (2) MGM Grand's surveillance operations.  Moreover, and as discussed at length in the Motion, Plaintiff's counsel's conduct relating to the Subpoena and its service further underscores their intent to harass Mr. Hornbuckle and MGM Grand.

5.      On May 9, 2025, the parties convened for a meet and confer conference to discuss several discovery-related topics, including the Subpoena and MGM Grand's objections to Plaintiff's efforts to depose Mr. Hornbuckle.  During the conference, I noted that the Subpoena was a clear attempt to harass Mr. Hornbuckle, who would have no personal knowledge related to this matter.  In response, Plaintiff's counsel – Raffi Nahabedian, Esq. – cited a surveillance policy produced by MGM Grand in this matter, which references that its surveillance department was created by "the board of directors." Mr. Nahabedian also represented that the Subpoena had already been served on Mr. Hornbuckle. Which ultimately proved to be untrue and a misrepresentation.  A true and correct copy of the May 9, 2025 Meet and Confer Conference Transcript is attached to the Motion as Exhibit 4.

6.      Shortly after the parties' meet and confer conference, and despite Mr. Nahabedian's insistence to the contrary, my firm confirmed that Mr. Hornbuckle had not been personally served with the Subpoena.  As such, Ms. Cannata e-mailed Mr. Clough and Mr. Nahabedian requesting that they cease all service attempts, given that our firm was authorized to accept service on Mr. Hornbuckle's behalf.  Neither Mr. Clough nor Mr. Nahabedian responded, and again, ignored our correspondence.  Instead, I was informed that additional attempts were made to personally serve Mr. Hornbuckle at his residence later that evening and thereafter.  A true and correct copy of the E-mail Regarding Acceptance of Service is attached to the Motion as Exhibit 5.

7.    It was not until late afternoon the following Monday, May 12, 2025, that I received a proposed acceptance of service.  I provided Plaintiff's counsel with the executed acceptance of service form on May 13, 2025.    A true and correct copy of the Acceptance of Service is attached to the Motion as Exhibit 6.

8.    On May 15, 2025, the parties convened for a continued meet and confer conference to discuss outstanding depositions, as well as the Subpoena.  Prior to the conference, and because Mr. Nahabedian would not be participating, Mr. Clough saw it fit to send an e-mail to counsel stating that he was prepared to move forward with all items to be discussed between the parties.  During the conference, Mr. Clough noted that he and Mr. Nahabedian had spoken about the Subpoena and determined that if there were a 30(b)(6) witness that could testify to the topics set forth therein, Plaintiff would withdraw the Subpoena and forgo deposing Mr. Hornbuckle.  In response, I maintained that it would be inappropriate to depose Mr. Hornbuckle, but agreed to present the idea to MGM Grand.  Mr. Clough further agreed to confer with Mr. Nahabedian as to whether Plaintiff would independently withdraw the Subpoena.    True and correct copies of Mr. Clough's May 15, 2025 E-mail and the May 15, 2025 Meet and Confer Conference Transcript are attached to the Motion as Exhibits 7 and 8, respectively.

9.    Notwithstanding the fact that Mr. Clough is an attorney of record for Plaintiff, on May 25, 2025, my firm received an e-mail from Mr. Nahabedian disaffirming the various agreements reached between Mr. Clough and counsel for defendants.  Although he did not participate in the conference due to a family emergency, Mr. Nahabedian declared that (1) the parties had not resolved the issue of Mr. Hornbuckle's deposition during their meet and confer conferences, (2) MGM Grand had not filed a motion to quash or for a protective order relating to the Subpoena, and (3) that Plaintiff intended to proceed with Mr. Hornbuckle's deposition as noticed.  Mr. Nahabedian also proceeded to renege Mr. Clough's prior agreement to an extension of the discovery deadlines in this matter.  A true and correct copy of Plaintiff's May 25, 2025 E-mail Correspondence is attached to the Motion as Exhibit 9.

10.    Given Mr. Nahabedian's complete reversal of the agreements reached by the parties on May 15, 2025, including what was discussed concerning Mr. Hornbuckle's deposition,

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

MGM Grand served an Objection to the Subpoena on May 20, 2025. A true and correct copy of the Objection is attached to the Motion as Exhibit 10.

11. On May 21, 2025, and despite the fact that I had already accepted service, Plaintiff's counsel attempted to personally serve the Subpoena at my firm's office. As such, MGM Grand requests that the Court instruct Plaintiff's counsel to stop any and all ongoing service attempts and further cease any efforts to communicate directly and/or indirectly with Mr. Hornbuckle.

12. As required by LR 7-4 and LR 26-6, I have made good faith efforts to confer and resolve this discovery dispute with Plaintiff's counsel without success. The instant Motion is not made to delay proceedings or for any improper purpose.

13. The parties affected by this Motion are as follows:

Plaintiff Shawn Padilla
c/o Raffi A. Nahabedian, Esq.
LAW OFFICE OF RAFFI A. NAHABEDIAN
7408 Doe Avenue
Las Vegas, Nevada 89117
E-mail: raffi@nahabedianlaw.com
-
c/o Stephen Clough, Esq. & Joseph Gutierrez, Esq.
MAIER GUTIERREZ & ASSOCIATES
8816 Spanish Ridge Ave.
Las Vegas, Nevada 89148
E-mails: sgc@mgalaw.com; jag@mgalaw.com

Defendant MGM Grand Hotel, LLC
c/o Lawrence J. Semenza, III, Esq. & Katie L. Cannata, Esq.
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
E-mails: ljs@semenzarickard.com; klc@semenzarickard.com

Defendants Andrew Stevenson, Kevin Adams & Jerimiah Tipton
c/o Michael P. Somps, Esq. & Nona Lawrence, Esq.
STATE OF NEVADA - OFFICE OF THE ATTORNEY GENERAL
5420 Kietzke Lane, #202
Reno, Nevada 89511
E-mails: msomps@ag.nv.gov;  nlawrence@ag.nv.gov

///

///

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

14. Plaintiff's counsel and counsel for Defendants Andrew Stevenson, Kevin Adams and Jerimiah Tipton are being notified of this Motion via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

DATED this 23rd day of May, 2025

*/s/ Lawrence J. Semenza, III*
LAWRENCE J. SEMENZA, III

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After two years of discovery, and on the heels of a failed settlement conference, Plaintiff has suddenly and without any basis issued a subpoena to depose William Hornbuckle, the Chief Executive Officer of MGM Resorts International ("MGM Resorts"), the parent company of Defendant MGM Grand.   Plaintiff, however, never identified Mr. Hornbuckle as a potential witness in this case.  What's more, Plaintiff never indicated any intent to depose Mr. Hornbuckle prior to issuing the Subpoena just one (1) month before the close of discovery.  Plaintiff's timing and tactics make one thing abundantly clear: this is not a legitimate attempt to obtain discoverable information.  Rather, it is a thinly veiled attempt to harass Mr. Hornbuckle.

Considering that he is *the* apex executive of MGM Resorts, it should come as no surprise that Mr. Hornbuckle has no direct or indirect relationship with this case – and was not involved in Plaintiff's alleged incident.   There is no evidence and/or facts suggesting anything to the contrary.  In fact, and as discussed below, the only attenuated basis on which Plaintiff seeks to depose Mr. Hornbuckle is flawed and meritless.  More importantly, Plaintiff has not – and cannot – argue that Mr. Hornbuckle would have unique, personal knowledge concerning Plaintiff and/or the underlying incident.   The foregoing alone indicates that the Subpoena was issued to harass Mr. Hornbuckle, with the hope that such tactics would lead to a favorable resolution in favor of Plaintiff.

Indeed, the procedural posture of this case – and Plaintiff's counsel's conduct – make it clear as day that the Subpoena was issued for the exclusive purpose of harassing Mr. Hornbuckle.  At every turn, Plaintiff's counsel has proceeded in bad faith, including: (1) ignoring reasonable requests to route service through MGM Grand's counsel, (2) misrepresenting the status of service, (3) continuing attempts to personally serve Mr. Hornbuckle at his private residence after MGM Grand's counsel represented that they'd accept service, and (4) ultimately reneging on agreements made during the parties' most recent meet and confer conference.  Moreover, there were clearly less intrusive discovery mechanisms available to Plaintiff to request

///

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

the information and documents sought by the Subpoena, which he and his counsel intentionally chose to forgo.

Plaintiff and his counsel's attempts to haul the CEO of Nevada's largest employer into a deposition must stop here.  Because the Subpoena is nothing more than an attempt to harass Mr. Hornbuckle – who is without any unique, relevant knowledge concerning this dispute, the Court must issue a protective order preventing Plaintiff from conducting his deposition and/or must quash the Subpoena.

Finally, considering that the Subpoena was ***not*** issued in good faith, but rather, to leverage undue pressure on an apex executive, MGM Grand respectfully requests an award of its attorneys' fees and costs against Plaintiff, as well as any other relief the Court deems proper and/or appropriate.

## II.    PERTINENT PROCEDURAL BACKGROUND

On April 30, 2025, MGM Grand's counsel received an e-mail from Plaintiff's counsel noting – among other things – that Plaintiff intended to schedule the deposition of Mr. Hornbuckle.  (Semenza Decl., ¶ 2; Ex 1.)   The foregoing e-mail was sent just a week after the parties' unsuccessful settlement conference.[1]  Prior to April 30, 2025, Plaintiff never indicated that he intended to depose Mr. Hornbuckle.  In fact, neither Plaintiff nor MGM Grand ever identified Mr. Hornbuckle as a witness in this matter.

The reason for that is obvious.  Mr. Hornbuckle is the CEO of MGM Grand's parent company, MGM Resorts.  As MGM Resorts' most apex executive, Mr. Hornbuckle oversees fourteen (14) properties in Las Vegas (which alone employ tens of thousands of employees), as well as several other properties across the United States and China.  In fact, and as the Court likely knows, MGM Resorts, through its subsidiaries, is the largest employer in the State of Nevada.  As its CEO, Mr. Hornbuckle sits at the helm of the company's local, domestic and international operations.   He is not, however, involved in the minutiae of day-to-day happenings at MGM Grand's property – and ***was not*** involved in Plaintiff's alleged incident.

---

[1] The parties attended a settlement conference on April 23, 2025.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

As such, in response to Plaintiff's counsel's April 30, 2025 e-mail, MGM Grand's counsel stated that that they would object to any effort to depose Mr. Hornbuckle, given that he would not have any personal knowledge concerning Plaintiff's alleged incident. (Semenza Decl., ¶ 2; Ex. 1.) MGM Grand's counsel further instructed Plaintiff's counsel that they were not to communicate directly, or indirectly, with Mr. Hornbuckle, and thereby requested that they refrain from attempting personal service of any documents, including a subpoena. (Semenza Decl., ¶ 2; Ex. 1.) Rather, MGM Grand's counsel requested that Plaintiff's counsel provide them with any documents for review for the purpose of determining whether they could accept service. (Semenza Decl., ¶ 2; Ex. 1.) Plaintiff's counsel refused to do so.

Instead, on May 8, 2025, Plaintiff issued the Subpoena and a Notice of Mr. Hornbuckle's deposition. (Semenza Decl., ¶ 3; Ex. 2; Ex. 3.) As set forth in the Subpoena, Plaintiff scheduled Mr. Hornbuckle's deposition for May 29, 2025, and requested that he provide "all documents/communications . . . prepared, presented, or provided by and/or between the Board of Directors ("Board") and [MGM Grand's] Surveillance Department ("SD") regarding Plaintiff and/or the matters involving the SD in relation to Plaintiff stemming from the events of December 26, 2020."[2] (Ex. 2.) Plaintiff also provided the following topics for Mr. Hornbuckle's deposition: (1) creation and oversight of MGM Grand's surveillance department by the Board of Directors; (2) policy and procedures of the surveillance department; and (3) the Board of Directors' knowledge of and actions regarding matters involving the surveillance department and Plaintiff. (*Id.*)

On May 9, 2025, the parties convened for a meet and confer conference to discuss several discovery-related topics, including the Subpoena. (Semenza Decl., ¶ 5.) During the conference, MGM Grand's counsel noted that the Subpoena was clearly an attempt to harass Mr. Hornbuckle, who would have no personal knowledge related to this matter. (Transcript of May 9, 2025 Meet and Confer Conference, 21:8-17, a true and correct copy is attached hereto as Exhibit 4.) In response, Plaintiff's counsel – Mr. Nahabedian – cited a surveillance policy produced by MGM

---

[2] Mr. Hornbuckle's deposition was unilaterally scheduled without accounting for the parties' respective availability.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Grand, referencing that its surveillance department was created by "the board of directors."  (*Id.* at 22:15-24.)

At no point in time did Plaintiff's counsel contend that Mr. Hornbuckle possessed unique, personal knowledge concerning Plaintiff and/or the alleged incident.  What's more, Plaintiff's counsel was provided with the surveillance policy at issue in ***September 2023***, and never made ***any mention*** of their desire to depose Mr. Hornbuckle – or any other "Board" member – until just one month before the close of discovery in this matter.

Moreover, when MGM Grand's counsel stated that they could accept service, Mr. Nahabedian represented that the Subpoena had "already been delivered to Mr. Hornbuckle's office" and served.  (*Id.* at 23:3-5, 24:5-6.)  This was the first time MGM Grand's counsel learned that the Subpoena had been sent out for personal service, and as such, counsel requested details concerning where, when and how the Subpoena was served.  Mr. Nahabedian did not have any details concerning the service that had purportedly been effectuated on Mr. Hornbuckle, but nevertheless reiterated that it was his "belief and understanding" that service "was done and effectuated." (*Id.* at 25:11-15.)

Shortly after the parties' meet and confer conference, MGM's counsel confirmed that Mr. Nahabedian's representations had been false, and that Mr. Hornbuckle had not been personally served with the Subpoena. (Semenza Decl., ¶ 6.)  As such, MGM Grand's counsel e-mailed Plaintiff's counsel requesting that they immediately cease all service attempts, given that MGM's counsel was authorized to accept service on Mr. Hornbuckle's behalf.  (*Id.*; Ex. 5.)   Plaintiff's counsel ignored the request.  (Semenza Decl., ¶ 6.)  Instead, MGM Grand's counsel was later informed that additional attempts were made to personally serve Mr. Hornbuckle at his gated residence that evening and over the weekend.  (*Id.*)

It was not until late afternoon the following Monday, May 12, 2025, that MGM Grand's counsel was provided with an acceptance of service.[3]   (*Id.* at ¶ 7.) The Subpoena that Plaintiff attempted to personally serve on Mr. Hornbuckle (and that counsel later accepted on his behalf)

---

[3] MGM Grand's counsel provided Plaintiff's counsel with the executed acceptance of service on May 13, 2025.  (Semenza Decl., ¶ 7; Ex. 6.)

11

was not accompanied by a check for witness fees in violation of FRCP 45(b)(1) and 28 U.S. Code § 1821.[4]

On May 15, 2025, the parties convened for a continued meet and confer conference to discuss outstanding depositions, as well as the Subpoena.  (*Id.* at ¶ 8.)  In anticipation of the conference, and because Mr. Nahabedian would not be participating, Mr. Clough saw it fit to send an e-mail to counsel stating that he was prepared to move forward with all items to be discussed between the parties.  (Ex. 7.)  During the conference, Mr. Clough noted that he and Mr. Nahabedian had spoken about the Subpoena and determined that if there were a 30(b)(6) witness that could testify to the topics set forth therein, Plaintiff would withdraw the Subpoena and forgo deposing Mr. Hornbuckle.  (Ex. 8, 22:22-23:6.)  In response, MGM Grand's counsel maintained that it would be inappropriate to depose Mr. Hornbuckle but agreed to present the idea to their client.  (*Id.* at 23:20-24:24.)  Mr. Clough further agreed to confer with Mr. Nahabedian as to whether Plaintiff would independently withdraw the Subpoena.  (*See id.* at 25:17-26:17.)

Notwithstanding the fact that Mr. Clough is an attorney of record for Plaintiff, on May 25, 2025, MGM Grand's counsel received an e-mail from Mr. Nahabedian disaffirming the various agreements reached between Mr. Clough and counsel for defendants.  Although he did not participate in the conference due to a family emergency, Mr. Nahabedian declared that (1) the parties had not resolved the issue of Mr. Hornbuckle's deposition during their meet and confer conferences, (2) MGM Grand had not filed a motion to quash or for a protective order relating to the Subpoena, and (3) that Plaintiff intended to proceed with Mr. Hornbuckle's deposition as noticed.  (Semenza Decl., ¶ 9; Ex. 9.)  Mr. Nahabedian also proceeded to renege Mr. Clough's prior agreement to an extension of the discovery deadlines in this matter.[5]  (Ex. 9.)

---

[4] *See* FRCP 45(b)(1) (stating that the serving party must tender the fee for 1 day's attendance and the mileage allowed by law); 28 U.S. Code § 1821 (stating that a witness is entitled to a fee of "$40 a day for each day's attendance," including "the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.")

[5] While not the subject of the instant Motion, during the May 15, 2025 conference, the parties agreed to extend the discovery deadline to October 2025 for purposes of conducting outstanding depositions in this matter. (Ex. 7, 31:3-34:4.) Specifically, Mr. Clough stated that he would "have no problem" with the proposed extension, so long as the rebuttal expert deadline remained as currently scheduled.  (*Id.*)

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

1    Mr. Nahabedian's e-mail was – frankly – perplexing to MGM Grand's counsel, considering that it

2    was Mr. Nahabedian's co-counsel, Mr. Clough, who proposed the abovementioned alternative to

3    Mr. Hornbuckle's deposition during the May 15, 2025 conference.

4            Given Mr. Nahabedian's complete reversal of the agreements reached by the parties on

5    May 15, 2025, including what was discussed concerning Mr. Hornbuckle's deposition, MGM

6    Grand served an Objection to the Subpoena on May 20, 2025.[6]  (Semenza Decl., ¶ 10; Objection

7    to Subpoena, a true and correct copy is attached hereto as Exhibit 10.)

8            Accordingly, MGM Grand now seeks a protective order prohibiting Plaintiff from

9    conducting Mr. Hornbuckle's deposition and/or seeks to quash the Subpoena in its entirety.  As

10   discussed in detail below, the Subpoena is solely intended to harass Mr. Hornbuckle, who would

11   have no unique, personal knowledge concerning Plaintiff, the alleged incident and/or MGM

12   Grand's surveillance operations.  In fact, the Subpoena's true purpose (*i.e.* to harass) is confirmed

13   by Plaintiff's counsel's related conduct, as well as the procedural posture of this case.  What's

14   more, there are clearly less invasive discovery methods Plaintiff could have pursued – but

15   deliberately chose not to – regarding MGM Grand's surveillance department, as well as his

16   (flawed) theory of the "Board of Directors" alleged involvement.

17           The foregoing, paired with the fact that the information and/or documents sought by the

18   Subpoena are completely irrelevant, require that the instant Motion be granted.  Should the Court

19   grant the Motion (it must), MGM Grand respectfully requests an award of attorneys' fees and

20   costs against Plaintiff pursuant to FRCP 37(a)(5), and other sanctions.

21   ///

22   ///

23

24   Counsel for MGM Grand thereby prepared and circulated a stipulation.  On May 25, 2025, however, Mr.
     Nahabedian reneged Plaintiff's counsel's prior agreement, stating that he would only agree to a 45-day
25   extension, and that Mr. Clough did not agree to an extension through October during the parties' May 15,
     2025 conference.  (Ex. 8.)
26
     [6] On May 21, 2025, and despite the fact that MGM Grand's counsel already accepted service, Plaintiff's
27   counsel attempted to personally serve the Subpoena counsel's office. (Semenza Decl., ¶ 11.) Thus, in
     addition to the relief sought herein, MGM Grand requests that the Court instruct Plaintiff's counsel to
28   cease any and all ongoing service attempts.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

### III.    ARGUMENT

####   A.    The Court Must Issue a Protective Order Preventing Plaintiff from Conducting Mr. Hornbuckle's Deposition and/or Quash the Subpoena

Pursuant to FRCP 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." "The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . ."  FRCP 26(c)(1).  Moreover, pursuant to FRCP 45(d)(3), "[o]n a timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

####   1.    *The Subpoena Is a Clear Attempt to Harass Mr. Hornbuckle, Who Would Have No Personal (Let Alone Unique) Knowledge of This Dispute*

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have 'observed that such discovery creates a tremendous potential for abuse or harassment.'" *Jensen v. BNSF Rwy. Co.*, No. 3:13-cv-05955-HSG (LB), 2015 WL 3662593, at *2 (N.D. Cal. May 19, 2015) (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 262–63 (N.D. Cal. 2012)). "The court therefore has discretion to limit discovery where the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263); *see also, Int'l Game Tech. v. Illinois Nat'l Ins. Co.*, 2018 WL 7499823, at *2 (D. Nev. Apr. 6, 2018) (stating that the Court "has discretion to prohibit the deposition of a high-level corporate executive, or 'apex' deponent, given the 'tremendous potential for abuse or harassment' that exists for such discovery.")

"Where a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Affinity Labs of Texas v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 53649, 2011 WL 1753982, at 15

14

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

(N.D. Cal. 2011) (citation omitted).  "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Jensen,* 2015 WL 3662593, at *3; *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, at *6 (S.D. Cal. March 22, 2007) (acknowledging that the apex doctrine implicates Fed.R.Civ.P. 26(c)).

### a.  Mr. Hornbuckle Has No Relationship to this Matter

As noted above, Mr. Hornbuckle is the CEO of MGM Resorts.  Acting as ***the*** apex executive of the company, Mr. Hornbuckle is in charge of well over a dozen of MGM Resorts' properties across the United States and China – with fourteen (14) located in Las Vegas alone. To say that Mr. Hornbuckle has his "hands full" would be an understatement.  Given his responsibilities as CEO, Mr. Hornbuckle was, unsurprisingly, ***not*** involved in Plaintiff's alleged incident in any shape or form.  Indeed, apart from the fact that Plaintiff has sued one of MGM Resorts' subsidiaries (*i.e.* MGM Grand), Mr. Hornbuckle has ***no relationship*** to this case whatsoever.

It thereby follows that Mr. Hornbuckle would have no unique, personal knowledge of Plaintiff's allegations in this case – or the underlying incident.  *See Int'l Game Tech. v. Illinois Nat'l Ins. Co*., No. 216CV02792APGNJK, 2018 WL 7499823, at *4 (D. Nev. Apr. 6, 2018) (stating that knowledge is personal if the individual at issue was involved to some degree in the subject matter, and that knowledge is unique if it is unavailable from less intrusive discovery.) Among other reasons, Mr. Hornbuckle was not involved in (1) Plaintiff's misidentification on the date in question, (2) MGM Grand's surveillance operations, (3) Plaintiff's subsequent detention, or (4) MGM Grand's notification of the Nevada Gaming Control Board ("NVGCB") concerning the alleged theft.

Even giving Plaintiff the benefit of the doubt that the Subpoena is not meant to harass (it clearly is), his purported basis for conducting the deposition of Mr. Hornbuckle is flawed.  As noted above, Plaintiff purportedly chose to subpoena Mr. Hornbuckle given (1) his status as an MGM Resorts Board member, and (2) a reference to a "Board of Directors" within MGM

Grand's surveillance policies. Plaintiff, however, assumes incorrectly that Mr. Hornbuckle is or was a member of the Board of Directors mentioned in MGM Grand's policies. He is not – and was not. The policies do not reference the **MGM Resorts International's** Board of Directors upon which Mr. Hornbuckle sits. Rather, the policies mention the **MGM-Mirage's** Board of Directors, which is not the same "Board" and which in fact no longer exists. (Surveillance Policies and Procedures, a true and correct copy is attached hereto as Exhibit 11.)[7] Setting aside Plaintiff's erroneous reliance upon MGM Grand's surveillance policies, there is simply **no evidence** to suggest that Mr. Hornbuckle would (1) know anything about Plaintiff and/or the alleged incident, or (2) have any unique knowledge concerning MGM Grand's day-to-day surveillance operations (including its related policies and procedures).

> **b.    Plaintiff's Counsel's Ongoing Conduct Confirms that the Subpoena Is Solely Intended to Harass Mr. Hornbuckle**

Considering that Mr. Hornbuckle has no unique, personal knowledge concerning this case, the issuance of the Subpoena – and Plaintiff's counsel's insistence on deposing him – are clearly intended to harass Mr. Hornbuckle. Indeed, the procedural posture of this matter and Plaintiff's counsel's related conduct clearly establish that is the case.

First, the timing of Plaintiff's counsel's sudden interest in deposing Mr. Hornbuckle is not coincidental. Among other reasons, it was just **one week** after the parties' unsuccessful settlement conference that Plaintiff's counsel communicated their intent to depose him. Put simply, it appears that the Subpoena was issued to harass Mr. Hornbuckle with the hopes of extorting a favorable resolution of this case – which is completely improper. In fact, to date, Plaintiff has not identified Mr. Hornbuckle as a witness in any of his FRCP 26(a) disclosures.

What's more, the Subpoena was issued just one month shy of the current discovery deadline. This is despite the fact that the surveillance policies, which Plaintiff's counsel relies upon to allegedly justify the Subpoena, were served by MGM Grand in **September 2023**. Plaintiff's counsel has yet to identify and/or explain why they suddenly became myopically

---

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

[7] MGM Grand's Surveillance Policies and Procedures have been designated as CONFIDENTIAL pursuant to the parties' Stipulated Protective Order. (ECF No. 30.) As such, MGM Grand is filing a Motion to Seal Exhibit 11 concurrently herewith.

focused on those policies' mention of a "Board of Directors" so late in discovery.   The true explanation is simple: Plaintiff and his counsel are (albeit, erroneously) utilizing those policies as an improper basis to harass Mr. Hornbuckle.

Next, prior to the issuance of the Subpoena, MGM Grand's counsel *expressly* instructed Plaintiff's counsel not to directly – or indirectly – communicate with Mr. Hornbuckle, including attempts to personally serve him with a subpoena.  (Ex. 1.)  Given that Mr. Hornbuckle is an apex executive of MGM Resorts, the foregoing request was clearly reasonable.   Nevertheless, Plaintiff's counsel deliberately ignored that request and began attempts to serve the Subpoena shortly after it was issued without notifying MGM Grand's counsel of the same.  (Ex. 2.)  In fact, it was not until the parties' May 9, 2025 meet and confer conference that MGM Grand learned that Plaintiff's counsel was attempting personal service on Mr. Hornbuckle.   Making matters worse, when MGM Grand's counsel reiterated that they would accept service of the Subpoena, Mr. Nahabedian repeatedly represented that Mr. Hornbuckle had already been served.  (Ex. 4, 21:18-23, 23:3-5, 24:5-6.)  That statement, however, was undeniably false.

Upon learning that Mr. Hornbuckle had not in fact been served – MGM Grand's counsel *again* requested that Plaintiff's counsel stop all attempts to personally serve the Subpoena, and instead, allow them to accept service on Mr. Hornbuckle's behalf.  (Ex. 5.)  Plaintiff's counsel ignored the request.  (Semenza Decl., ¶ 6.)  As a result, Plaintiff's process server continued attempts to personally serve Mr. Hornbuckle at his gated residence on May 9, 2025 and over the weekend.  (*Id.*)  It was not until the following week that Plaintiff's counsel relented and provided MGM Grand's counsel with a proposed acceptance of service.  (*Id.* at ¶ 7.)

Finally, and as noted above, Mr. Clough and counsel for MGM Grand discussed a potential alternative to Mr. Hornbuckle's deposition during their May 15, 2025 conference. Notwithstanding the fact that Mr. Clough is also counsel of record for Plaintiff, and was the one to *present* the proposal to MGM Grand, Mr. Nahabedian later *reneged* his co-counsel's proposal and unilaterally declared that "the deposition of Mr. Hornbuckle . . . will go forward as noticed." (Ex. 8, 22:22-23:6; Ex. 8.)  In other words, Mr. Nahabedian refused to entertain any alternatives.

///

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Based upon the foregoing, it is ***readily apparent*** that the Subpoena was issued solely to harass Mr. Hornbuckle, who clearly would not have any unique, personal knowledge concerning this case. Plaintiff and his counsel's improper litigation tactics should not be tolerated by the Court. A protective order must be entered to prevent Plaintiff from conducting Mr. Hornbuckle's deposition and/or the Court must quash the Subpoena. *See Homesite Ins. Co. v. Norcold, Inc.*, No. 2:21-CV-02167-RFB-DJA, 2023 WL 4052430, at *9 (D. Nev. June 15, 2023) ("Regarding the motion to quash, although Plaintiffs assert that their subpoena was proper because Mr. Hillenbrand is not a named party, he is the Chairman/President and Director of two named parties. As a result, a subpoena was unnecessary to depose him. The Court thus grants the motion to quash.")

### 2.    *Less Intrusive Discovery Methods Were Available to Plaintiff*

As discussed below, MGM Grand maintains that the topics set forth in the Subpoena, and the documents requested from Mr. Hornbuckle, individually, have no bearing on this dispute. However, even if the information and/or documents sought were relevant – Plaintiff could have pursued related discovery from an FRCP 30(b)(6) designee and/or MGM Grand. Plaintiff, however, intentionally chose not to do so. Instead, Plaintiff issued the Subpoena to Mr. Hornbuckle in his individual capacity. The foregoing reveals the true purpose of the Subpoena: to improperly harass MGM Resorts' CEO.

Indeed, none of the Subpoena's topics require testimony from Mr. Hornbuckle as an individual. In fact, Plaintiff is seeking information that Mr. Hornbuckle would not have, when Plaintiff could have sought such testimony from a FRCP 30(b)(6) witness (assuming that testimony would be relevant and/or appropriate). *See* FRCP 30(b)(6); *Homesite Ins. Co. v. Norcold, Inc.*, No. 2:21-CV-02167-RFB-DJA, 2023 WL 4052430, at *9 (D. Nev. June 15, 2023) (granting a protective order against an apex deposition, where the plaintiffs could obtain the same information via a FRCP 30(b)(6) deponent). Furthermore, Mr. Hornbuckle, in his individual capacity, would not possess any of the purported documents sought by Plaintiff.

///

///

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

1    While Plaintiff could have requested such documents from MGM Grand, he deliberately

2    chose not to do so.[8]

3    Clearly, there were less intrusive discovery methods available to Plaintiff – which he

4    *intentionally* did not pursue.[9]  Again, Plaintiff's deliberate decision not to seek this information

5    by way of discovery requests to MGM Grand, or via FRCP 30(b)(6) topics, serves as further

6    evidence of Plaintiff and his counsel's intent to harass Mr. Hornbuckle.  Accordingly, the Court

7    must issue a protective order prohibiting Mr. Hornbuckle's deposition in this matter and/or quash

8    the Subpoena.

9    **3.    The Information and Documents Sought by the Subpoena Have No
         Bearing on This Dispute**

10

11    In addition to the foregoing, the information and documents sought by the Subpoena –

12    particularly those pertaining to the "Board of Directors" – are irrelevant and unproportional to the

13    needs of this action.  Among other things, the purported "creation and oversight" of MGM

14    Grand's surveillance department has nothing to do with Plaintiff's alleged incident.  This case

15    involves a simple instance of mistaken identity resulting from the fact that Plaintiff – and the true

16    suspect's – player information was switched within the table management system, which led

17    surveillance to believe that Plaintiff was the individual responsible.   As such, the initial

18    "creation" of MGM Grand's surveillance department is neither proportional nor probative to the

19    issues presented in this case.  *See* FRCP 26(b)(1) ("Parties may obtain discovery regarding any

20

21    _____

22    [8] *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014)
      ("A court may prohibit a party from obtaining discovery from a non-party if that same information is

23    available from another party to the litigation."); *see also Precourt v. Fairbank Reconstruction Corp.*, 280
      F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking information can easily obtain the same information

24    without burdening the non-party, the court will quash the subpoena."); *Arthrex, Inc. v. Parcus Medical,
      LLC*, 2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a

25    source with which it is litigating is a good reason to forbid it from burdening a non-party with production
      of those same requests."); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371-72 (9th Cir.

26    1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not
      be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.").

27    [9] Indeed, while Mr. Clough presented an alternative to Mr. Hornbuckle's deposition (*i.e.* assigning the
      Subpoena's topics to an FRCP 30(b)(6) designee), Mr. Nahabedian later refused to entertain that proposal

28    and insisted that Mr. Hornbuckle would be deposed.

non-privileged matter *that is relevant to any party's claim* or defense and proportional to the needs of the case . . . .") (emphasis added); *see also RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, 2017 WL 2908869, *7 (D. Nev. July 6, 2017).

What's more, as a non-restricted licensee, MGM Grand is required to comply with the Nevada Gaming Control Board's surveillance-related regulations.  *See* Nev. Gam. Reg. 5.  MGM Resorts' Board of Directors exercises no oversight over the NVGCB regulations – or MGM Grand's implementation of those regulations within its surveillance operations.  Rather, it is the NVGCB that regulates licensees' surveillance operations, and the licensee (here, MGM Grand) that is responsible for adhering to Nev. Gam. Reg. 5.

Moreover, there is simply *nothing* to indicate that MGM Resorts' Board of Directors (which is nowhere referenced in the MGM Grand's surveillance policies at issue) would have any knowledge of either Plaintiff or the alleged incident.  The same is true of MGM Grand's day-to-day surveillance operations and related policies and procedures.[10]  Plaintiff has not presented – and cannot present – any facts and/or evidence to the contrary.

Accordingly, good cause exists to issue a protective order preventing Mr. Hornbuckle's deposition and/or to quash the Subpoena in its entirety.

## B. MGM Grand Is Entitled to an Award of Its Attorneys' Fees and Costs, As Well as Other Appropriate Sanctions

FRCP 37(a)(5) applies to an award of expenses in relation to a motion for protective order.  *See* FRCP 26(c)(3).  Pursuant to FRCP 37(a)(5), if a motion for protective order is granted, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (Emphasis added.)

As established herein, good cause clearly exists for the issuance of a protective order.  The Subpoena was – for all intents and purposes – issued for an improper reason.  First, there are

---

[10] The question of whether MGM Resorts' Board of Directors was involved with MGM Grand's surveillance operations does *not* necessitate the deposition of Mr. Hornbuckle.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

simply no facts and/or evidence to suggest that Mr. Hornbuckle would have unique, personal knowledge concerning Plaintiff and/or the alleged incident.    Nevertheless, Plaintiff and his counsel have insisted on conducting Mr. Hornbuckle's apex deposition at any cost.    While blatantly disregarding MGM Grand's counsel's requests, Plaintiff's counsel proceeded to initiate – and attempt – personal service of the Subpoena on Mr. Hornbuckle.    Their attempts persisted even after MGM Grand's counsel (repeatedly) stated that they were authorized to accept service. The foregoing is the hallmark of harassment – which is precisely what the Subpoena was intended to accomplish.

Plaintiff and his counsel's litigation tactics were also made clear after the parties' May 15, 2025 meet and confer conference. While the parties discussed a potential alternative to conducting Mr. Hornbuckle's deposition (**which was presented by Plaintiff's counsel**), Mr. Nahabedian later repudiated those discussions and insisted on moving forward with the deposition as noticed.    In other words, Mr. Nahabedian has intentionally refused to acknowledge or entertain less intrusive discovery methods – which is precisely what necessitated the instant Motion.

Therefore, should the Court grant the Motion (it must), MGM Grand respectfully requests an award of attorneys' fees and costs against Plaintiff, as well as any other sanctions the Court deems appropriate.[11]

///

///

///

///

///

///

///

---

[11] Among other things, it may be an appropriate remedy to conduct an evidentiary hearing concerning Plaintiff's counsel's underlying rationale and reasons for attempting to depose Mr. Hornbuckle, which would include testimony from Mr. Clough and Mr. Nahabedian.

## IV.    CONCLUSION

Based upon the foregoing, the Court must issue a protective order prohibiting Plaintiff from conducting Mr. Hornbuckle's deposition.  Considering the impropriety of the Subpoena and Plaintiff's counsel's related conduct, MGM Grand also respectfully requests an award of its attorneys' fees and costs pursuant to NRCP 37(a)(5).

DATED this 23rd day of May 2025.

SEMENZA RICKARD LAW


*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

*Attorneys for Defendant MGM Grand Hotel, LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Rickard Law in Clark County. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

On the 23rd day of May 2025, I served the document(s), described as:

**DEFENDANT MGM GRAND HOTEL, LLC'S *EMERGENCY* MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH SUBPOENA**

☒    by placing the ☐ original ☒ a true and correct copy will be sent by the following:

☒ a.    via **CM/ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**OFFICE OF THE ATTORNEY GENERAL**
Michael Somps     msomps@ag.nv.gov,
Nona ML Lawrence, nlawrence@ag.nv.gov
*Attorneys for Defendants Kevin Adams and Andrew Stevenson*

**MAIER GUTIERREZ & ASSOCIATES**
Joseph A. Gutierrez, jag@mgalaw.com,
Stephen G. Clough, sgc@mgalaw.com,
Yadira Gonzalez, yg@mgalaw.com
and
**LAW OFFICE OF RAFFI A. NAHABEDIAN**
Raffi A. Nahabedian, Esq., raffi@nahabedianlaw.com
*Attorneys for Plaintiff*

☐ b.  **BY U.S. MAIL.**

☐ c.  **BY PERSONAL SERVICE.**

☐ d.  **BY DIRECT EMAIL.**

☐ e.  **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Angie Barreras*
An Employee of Semenza Rickard Law