UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHAWN PADILLA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MGM GRAND HOTEL, LLC, a Nevada entity; ANDREW STEVENSON, an individual (Doe 1); KEVIN ADAMS, an individual (Doe 2); JEREMIAH TIPTON (Doe 3); DOES IV through X, and ROSE I through X,<br><br>　　　　Defendants. | Case No. 2:22-cv-02109-RFB-EJY<br><br>**ORDER** |

Pending before the Court are Defendant MGM Grand Hotel LLC's[1] Emergency Motions for Protective Order (ECF No. 99), to Quash Subpoena (ECF No. 100), and to Extend Discovery Deadlines ("Motion to Extend") (ECF No. 109). After MGM Grand filed its Motion to Extend, the Court vacated all scheduled deposition without prejudice and stayed all discovery not yet propounded until the Court considered MGM Grand's pending Motions. ECF No. 110. Defendants Kevin Adams, Andrew Stevenson, and Jeremiah Tipton[2] filed a collective Non-Opposition to the Motion to Extend. ECF No. 118. Plaintiff filed a Consolidated Response to MGM Grand's Motions for Protective Order and to Quash (ECF No. 117), as well as a Response to the Motion to Extend (ECF No. 119). MGM Grand filed Replies in support of all three of its Motions at ECF Nos. 120, 121, and 122.[3] The Court carefully reviewed all Motions, Responses, and Replies. The Court finds as follows.

**I.    BRIEF SUMMARY OF RELEVANT FACTS**

The pending Motions arise out of discovery disputes among the parties. Tensions have seemingly risen since the parties failed to reach a resolution at their settlement conference held on

---

[1]    Hereinafter "MGM Grand" or the "Company."
[2]    Hereinafter the "Individual Defendants."
[3]    Also pending is MGM Grand's Motion to Supplement its Motions for Protective Order and to Quash Subpoena (ECF No. 112) to which no opposition was filed. This Motion is denied as moot below.

1

April 23, 2025. ECF No. 98. On April 30, 2025—one week after the failed settlement conference—Plaintiff expressed his intent to depose Mr. Hornbuckle, the CEO of MGM Grand's parent company, MGM Resorts International. ECF No. 99 at 9. In response, MGM Grand explained the Company would object to any effort to depose Mr. Hornbuckle and requested Plaintiff's counsel direct all communication regarding Mr. Hornbuckle to counsel for MGM Grand. *Id*. at 10. On May 8, 2025, Plaintiff issued a subpoena for Mr. Hornbuckle's deposition, with a corresponding notice, scheduling the deposition for May 29, 2025. *Id.*

After the parties convened for a meet and confer, and MGM Grand confirmed Plaintiff misrepresented alleged effective service of Mr. Hornbuckle at his office, MGM Grand told Plaintiff that future service attempts on Mr. Hornbuckle were to be made through MGM Grand counsel who was authorized to accept service. *Id.* at 11. Despite this communication, Plaintiff made multiple attempts to serve Mr. Hornbuckle at his personal residence the same evening as the meet and confer and then over the following weekend. *Id*. Nevertheless, on May 12, 2025, MGM Grand's counsel received a proposed acceptance of service, which was executed and returned the following day. *Id*. at 5, 11; ECF No. 99-7. The subpoena identifies the topics for the deposition as: "Creation and oversight of Surveillance Department ('SD') by the Board of Directors ('Board'); Policy and Procedures of the SD; the Boards knowledge of and actions regarding matters involving the SD and Plaintiff." ECF No. 99-3.

On May 15, 2025, the parties convened for a second meet and confer. ECF No. 99 at 12. Plaintiff suggested that if a 30(b)(6) witness could testify to the topics identified in Mr. Hornbuckle's subpoena, Plaintiff would withdraw Mr. Hornbuckle's subpoena. ECF No. 99-9 at 9 (internal pages 22:22-23:14). MGM Grand responded that it would take the proposal to their client for consideration. *Id*. (internal page 23:20-22). The parties also discussed an extension of discovery through the end of October 2025, with MGM Grand suggesting the deadline to depose fact witnesses, expert witnesses, and proposed 30(b)(6) deponents be moved, together with a roadmap for future motion practice, while leaving the initial expert disclosure and rebuttal deadlines in place. *Id.* at 11 (internal pages 32:9-33:21). While Plaintiff's counsel who attended the May 15th meet and confer stated he had no objection to the proposal, which that same counsel confirmed later in the same

meeting (*id*. at 13 (internal page 38:12-22)), Plaintiff's lead counsel rejected the stipulation confirming the agreement circulated on May 19, 2025.  ECF No. 99-10 at 3 and again at 2. Specifically, and notwithstanding the May 15 agreement by counsel for Plaintiff who attended the May 15th meet and confer, Plaintiff's lead counsel stated Mr. Hornbuckle's deposition would proceed as noticed and that Plaintiff would only stipulate to a 45 day extension for discovery. *Id*. at 2.

MGM Grand filed its Emergency Motions for Protective Order and to Quash on May 23, 2025, arguing Mr. Hornbuckle's deposition was scheduled for May 29, 2025.  ECF No. 99 at 3. Shortly thereafter, MGM Grand filed its Motion to Extend due to the impending close of discovery. ECF No. 109.  On May 28, 2025, the Court issued a Minute Order vacating all scheduled depositions without prejudice and staying all discovery not yet propounded pending resolution of MGM Grand's Motions.  ECF No. 110.

## II.    MOTIONS AND REPLIES

### A.    Motions for Protective Order and to Quash Subpoena.

#### 1.    *MGM Grand's Motions*

MGM Grand argues that a protective order is warranted because the subpoena seeking testimony of Mr. Hornbuckle, MGM Resorts International's CEO, is an exercise of harassment, there are less intrusive means available to obtain the information sought, and the information sought is not relevant to the issues before the Court.  ECF No. 99 at 14, 18, 19.  Specifically, MGM Grand submits Mr. Hornbuckle has no relationship to the matter in dispute and has no personal or unique knowledge of Plaintiff's detention.  *Id*. at 15.  MGM Grand submits harassment is demonstrated by the fact that only one week after the failed settlement conference Plaintiff, who at no time during 19 months of discovery expressed an intent to depose Mr. Hornbuckle, suddenly decided to unilaterally set this deposition and serve this apex deponent despite not identifying Mr. Hornbuckle as a person with knowledge in any Rule 26 disclosure.  *Id*. at 16.  Plaintiff relies on the MGM Grand surveillance policies (the "Policies") that identify the "Board of Directors" as its creator to justify the deposition, yet MGM Grand highlights that Plaintiff received these Policies in September 2023 and failed to explain why, just now, Plaintiff decided to take an apex deposition.  *Id*. at 16-17.  MGM Grand also

3

1 takes issue with Plaintiff's attempts to personally serve Mr. Hornbuckle despite MGM Grand's
2 counsel stating he would accept service on Mr. Hornbuckle's behalf. *Id*. at 17.
3   MGM Grand points out that there are less intrusive discovery means available for Plaintiff
4 to obtain the information he seeks. *Id*. at 18. MGM Grand contends the topics and documents sought
5 are not relevant to the dispute, but even if they were, such information could be obtained through
6 MGM Grand and its 30(b)(6) designee. *Id*. Further, Mr. Hornbuckle is not in possession of the
7 documents sought, and no request was ever made on MGM Grand. *Id*. at 18-19.
8   Lastly, MGM Grand argues the information sought in the subpoena has no bearing on this
9 dispute. *Id*. at 19. MGM Grand contends that information about the "creation and oversight" of the
10 Surveillance Department is not probative or proportional to Plaintiff's case. *Id*. Moreover, as a
11 licensee, MGM Grand is required to comply with the Nevada Gaming Control Board's surveillance
12 regulations and the Board of Directors exercises no discretion or oversight over these requirements.
13 *Id*. at 20. Based on the forgoing, MGM Grand states it is entitled to an award of attorneys' fees and
14 costs as well as other sanctions the Court deems appropriate. *Id*.

15              *2.   Plaintiff's Consolidated Response*

16   Plaintiff advances two theories in his prefatory statement. Plaintiff asserts that (1) MGM
17 Grand failed to comply with the express terms of the executed acceptance of service, and (2) MGM
18 Grand failed to provide an alternate 30(b)(6) deponent in lieu of Mr. Hornbuckle. ECF No. 117 at
19 3, 5.
20   First, the acceptance of service specified that "[t]he undersigned further accepts service on
21 behalf of said deponent and will provide notice to Plaintiff said deponent received a copy" of the
22 notice of deposition and subpoena. *Id*. at 4. Plaintiff reasons to the extent that acceptance of service
23 was executed by MGM Grand's counsel, but despite "at least a half-dozen requests," defense counsel
24 has not provided the requested notice. *Id*. Therefore, Plaintiff espouses that "*unless and until* [MGM
25 Grand's] counsel *provides 'notice'* to [Plaintiff's] counsel that Mr. Hornbuckle *'received a copy'* of
26 the Subpoena and Notice of Deposition, per the explicit terms of the Acceptance of Service,
27 Defendant MGM Grand is indisputably in breach whereby the matters before this Court are
28 premature and moot." *Id*. at 5 (emphasis in original).

4

Second, Plaintiff justifies the subpoena on the grounds that MGM Grand failed to provide an alternate deponent. Plaintiff claims he proposed to MGM Grand that he would "entertain and agree to a 30(b)(6) witness" for the topics set forth in the Subpoena and Notice of Deposition to Mr. Hornbuckle, while reserving a right to depose Mr. Hornbuckle should the 30(b)(6) witness be "ineffective or deficient." *Id*. at 6. Plaintiff asserts that MGM Grand failed to respond to this proposal. *Id*.

Plaintiff avows that his decision to depose Mr. Hornbuckle is not borne of an intent to harass, but the result of Mr. Hornbuckle's experience including his position on the Board of Directors and his experience managing MGM Resorts International properties, including the MGM Grand. *Id*. at 17. Plaintiff notes that Mr. Hornbuckle oversaw and managed the MLife Rewards program, which encompasses members at all MGM Resorts International properties and that Plaintiff was a member at the highest level. *Id*. at 18. Therefore, Plaintiff contends, it "remains reasonable to believe and conclude that Mr. Hornbuckle would be knowledgeable and aware of the events and circumstances involving the surveillance department and [Plaintiff]." *Id*.

Plaintiff disputes MGM Grand's contention that Mr. Hornbuckle would have no knowledge of Plaintiff's lawsuit because the Board of Directors must be aware of and consider legal proceedings against MGM Resorts International and its properties, which would necessarily include the present action. *Id*. Plaintiff further explains the notice of deposition was issued a week after the settlement conference because he had hoped the case would settle. *Id*. at 18. Plaintiff claims that it is inapposite that attempts to serve Mr. Hornbuckle were made after MGM Grand's counsel's instruction because "there is no rule that provides for or allows an attorney to so 'instruct.'" *Id*. at 19.

Plaintiff asserts that MGM Grand has taken inconsistent positions and suggests the case has entered "*Bizzaro World*." *Id*. at 20. Plaintiff says that it is impossible to "know, understand, or ascertain the interrelationship and oversight between the Board of Directors and the surveillance department – "created by" the Board of Directors – without a proper deposition on the subject." *Id*. at 21. Without an explanation of the relationship, Plaintiff claims he cannot possibly know how the Board of Directors is involved with the surveillance department. *Id*. Plaintiff further argues that MGM Grand suggested the information sought from Mr. Hornbuckle could be obtained through

5

1    MGM Grand witnesses; however, MGM Grand never identified such witnesses for Plaintiff's
2    consideration. *Id*. at 21.

3    Lastly, Plaintiff argues that the request for sanctions must be denied. *Id*. Plaintiff asserts
4    that his decision to depose Mr. Hornbuckle is reasonable and not "whimsical or random." *Id*. at 20.
5    Plaintiff further alleges that MGM Grand has "failed to engage in a 'proper and good faith' meet
6    and confer" by failing to provide Plaintiff with an alternative 30(b)(6) witness. *Id*. at 21.

7                3.    *MGM Grand's Reply*

8    MGM Grand offers three primary arguments in reply. ECF No. 120. First, the Company
9    contends Plaintiff's assertion that MGM Grand prematurely filed the Motion for Protective Order is
10   meritless and in bad faith. *Id*. at 2. MGM Grand submits that Plaintiff reneged on a prior agreement
11   to use a 30(b)(6) deponent in lieu of Mr. Hornbuckle thereby forcing MGM Grand to bring the
12   instant Motion for Protective Order. *Id*. at 3. Moreover, MGM Grand submits Plaintiff has not
13   shown any merit to his acceptance of service argument. *Id*. at 5.

14   Second, MGM Grand contends that good cause exists for its Motion. *Id*. MGM Grand
15   maintains the subpoena was issued for an improper purpose to harass Mr. Hornbuckle in the hopes
16   of gaining a favorable settlement. *Id*. MGM Grand avers that Mr. Hornbuckle does not have any
17   unique personal knowledge on the matter. *Id*. at 8. MGM Grand notes that while Plaintiff justifies
18   the deposition on the basis that Mr. Hornbuckle is on the Board of Directors and the Policies cite
19   Board of the Directors as the creator, the Policies reference a different Board—MGM Mirage—of
20   which Mr. Hornbuckle was never a member. *Id.* MGM Grand further explains that the MGM
21   Mirage Board no longer exists. *Id.* Moreover, MGM Grand asserts Plaintiff fails to explain why
22   Mr. Hornbuckle would have unique knowledge even if, as the CEO of MGM Resorts International,
23   he had learned of the incident. *Id*. at 9. MGM Grand argues that Plaintiff misrepresents the record
24   by arguing that alternative methods of discovery were proposed and not acted upon by MGM Grand.
25   Instead, MGM Grand maintains that it was Plaintiff who "expressly and unequivocally" withdrew
26   discussions of using a 30(b)(6) deponent in place of Mr. Hornbuckle. *Id*.

27   Third, MGM Grand maintains that it is entitled to sanctions. MGM Grand says that
28   Plaintiff's bad faith conduct has made it "nearly impossible" for the Company to determine on which

6

counsel for Plaintiff it can rely when negotiating discovery or other issues in dispute, and whether MGM Grand can trust any representations made by such counsel. *Id*. at 10.

        B.      <u>Motion to Extend</u>.

MGM Grand requests the Court extend the close of discovery for 140 days. ECF No. 109 at 23. When filed, MGM Grand based its request on the Motions pending before the Court and the infeasibility to complete all remaining discovery. *Id* at 22. At the time the Motion was filed the following discovery had yet to be complete: (1) Plaintiff's depositions of four fact witnesses noticed in late May; (2) Plaintiff's deposition of MGM Grand's security expert; (3) Plaintiff's deposition of MGM Grand's 30(b)(6) designee; (4) the Individual Defendants' deposition of MGM Grand's 30(b)(6) designee, and if time permits; (5) MGM Grand's deposition of the NVGCB's 30(b)(6) designee; and (6) MGM Grand's depositions of Plaintiff's experts. *Id.* MGM Grand also alerted the Court to the fact that it was untimely served with a second set of written discovery, which would likely be renewed if the Motion to Extend were granted.

Subsequent to the Motion to Extend Discovery, which was opposed by Plaintiff but not the Individual Defendants, the parties met and conferred agreeing that the written discovery previously propounded on MGM Grand by Plaintiff and the Individual Defendants would be responded to within 30 days of the meet and confer conference. ECF No. 134 at 2. The parties further agreed that depositions of the four fact witnesses identified by Plaintiff in late May would be scheduled on mutually agreed upon dates. *Id*. As of the end of August the parties were still debating the topics for Plaintiff's and the Individual Defendant's depositions of MGM Grand's 30(b)(6) designee. *Id*. The parties say that if they can reach an agreement on the topics, then the depositions will proceed at a mutually agreeable time. *Id*. Plaintiff explains that if agreement cannot be reached, there "may and/or will" be future motion practice. *Id*. at 3. Lastly, the parties agree that the depositions of each of their respective experts will take place at a time that is mutually convenient for the parties. Because the Court did not ask for and has not received an update on discovery since the end of August, it does not know what remains to be addressed and on what timetable that should occur. Nonetheless, an extension of discovery has already occurred and that extension, along with whatever extension is needed to complete discovery is granted by the Court.

7

### III.  DISCUSSION[4]

####   A.  Legal Standard.

Courts may issue a protective order upon a showing of good cause to prevent annoyance, embarrassment, oppression, or the undue burden or expense of discovery.  Fed. R. Civ. P. 26(c)(1).  "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery."  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).  "This burden may be met by showing that the discovery requested is irrelevant, overly broad, burdensome, or oppressive."  *Heyman v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, Case No. 2:15-cv-1228-RFB-GWF, 2018 WL 10323384, at *1 (D. Nev. Apr. 20, 2018).  In the case where a request is overly broad or relevancy is not readily apparent, the party seeking discovery has the burden to show that their request is relevant.  *Id*.

"Rule 45 governs the issuance of subpoenas requiring non-parties to produce designated documents."  *Homesite Insurance Company v. Norcold, Inc.*, Case No. 2:21-cv-02167-RFB-DJA, 2023 WL 4052430, at *8 (D. Nev. June 15, 2023).  "A court must grant a timely motion to quash or modify a subpoena that fails to allow reasonable time to comply, requires a person to comply beyond the geographical limits specified in Rule 45(c), requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden."  *Id*.  The moving party "bears the burden of showing why a discovery request should be denied."  *Hybrid Int'l, LLC v. Scotia Int'l of Nevada, Inc.*, Case No. 2:19-cv-02077-JCM-EJY, 2020 WL 5223301, at *1 (D. Nev. Sept. 1, 2020).

####   B.  The Apex Witness Doctrine, the Motions for Protective Order, and to Quash.

"When a party seeks the deposition of a high-level executive (a so-called "apex" deposition), courts have 'observed that such discovery creates a tremendous potential for abuse or harassment.'"  *Apple Inc. v. Samsung Electronics Co., Ltd*., 282 F.R.D. 259, 263 (N.D. Cal. April 4, 2012); *see also Homesite*, 2023 WL 4052430 at *9.  Courts have discretion to limit discovery where it may be obtained "from some other source that is more convenient, less burdensome, or less expensive."

---

[4]  The Court will not address every argument raised in the briefing, and any argument not addressed explicitly is rejected to the extent that it is inconsistent with the outcome of the order.  *PlayUp, Inc. v. Mintas*, 635 F.Supp. 3d 1087, 1099 (D. Nev. 2022).

*Apple*, 282 F.R.D. at 263. In determining whether to permit an apex deposition to go forward, the court will consider whether (1) the deponent has unique personal knowledge of the relevant information, and (2) the party seeking the deposition has exhausted other less intrusive discovery methods. *Id*.

The party seeking to prevent the deposition bears a heavy burden to show why such discovery should be denied since it is "very unusual 'for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.'" *Id*. In addition, the court must consider the rank of the executive because "[o]n the proverbial sliding scale, the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Id*., *see also Securities and Exchange Commission v. Azarmehr*, Case No. 2:24-cv-00707-JCM-MDC, 2025 WL 1238038, at *3 (D. Nev. Apr. 28, 2025). "Where a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper," especially where the information sought in the deposition could be obtained through interrogatories or depositions of lower-level employees with more direct knowledge of the issues at fact." *Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*, Case No. 2:18-cv-02342-APG-VCF, 2020 WL 8619790, at *2 (D. Nev. Sept. 10, 2020).

To warrant an apex deposition, the party seeking discovery must have first exhausted other less intrusive means. *Int'l Game Tech. v. Illinois Nat'l Ins. Co.*, Case No. 2:16-cv-02792-APG-NJK, 2018 WL 7499823, at *4 (D. Nev. Apr. 6, 2018). These means include "interrogatories, requests for admissions, depositions of lower-level employees, and Fed. R. Civ. P. 30(b)(6) depositions as forms of less intrusive methods of discovery that must be conducted prior to deposing an apex deponent." *Id*. at *7, n.3. While this list is not exhaustive and the party seeking to conduct the deposition need not have exhausted each one of these forms of discovery prior to deposing the executive, "it must have at least deposed lower-level employees." *Id*.; *see also Klungvedt v. Unum Group*, Case No. 2:12-cv-00651-JWS, 2013 WL 551473, at *3 (D. Ariz. Feb. 13, 2013).

The Court finds the apex doctrine precludes the deposition of Mr. Hornbuckle at this time. Mr. Hornbuckle is CEO of a large publicly traded corporation; there is nothing before the Court

evidencing he has any knowledge, let alone unique knowledge, that is relevant to this case; and while the parties debate who is responsible for the breakdown in communication, it is clear that Plaintiff has not demonstrated exhaustion of less intrusive means to gather the information he seeks.

In fact, the record is missing anything that would inform the Court of less intrusive efforts to obtain the information sought through the subpoena of Mr. Hornbuckle. At the time Mr. Hornbuckle's deposition would have proceeded, Plaintiff had apparently not yet deposed any lower level employees who would have knowledge of the topics noticed. *See Int'l Game Tech.*, 2018 WL 7499823, at *4. By way of example, the subpoena identified "Policy and Procedures of the [Surveillance Department]" as a topic for the deposition; however, Plaintiff has not demonstrated that he sought this information through any form of discovery other than pursuing the deposition of Mr. Hornbuckle. Case law confirms there are likely less intrusive sources available. *See e.g. McEwen v. MGM Grand Detroit*, Case No. 03-73039, 2006 WL 83476 (E.D. Mich. Jan. 12, 2006) (noting that investigators in the surveillance department reported to the vice-president of surveillance); *Kawamura v. Boyd Gaming Corp.*, Case No. 2:13-cv-00203-JCM-GWF, 2014 WL 3953179, at **1-2 (D. Nev. Aug. 13, 2014) (using the Director of Security's affidavit to discuss the policy for maintaining security records for a given time period); *Rainey v. PNK Lake Charles, LLC*, Case No. 2:22-cv-05289, 2024 WL 499539, at *2 (W.D. La. Feb. 8, 2024) (finding that the Director of Surveillance for the casino had personal knowledge of the video surveillance process).

Plaintiff's noticed topics and Consolidated Response also reveal a particular interest in what entanglement may exist between the Board of Directors and the Surveillance Department. *See* ECF No. 117 at 17, 21 ("It is also impossible to know, understand, or ascertain what knowledge the Board of Directors has and become involved in regarding surveillance department matters, such as the surveillance department's wrongful and oppressive accusation [of Plaintiff]"). However, as indicated above, the proportionate need for this information is wanting and could, at least quite possibly, be discovered by deposing executives within the MGM Grand's Surveillance Department. *Klungvedt*, 2013 WL 551473 at *3 ("Without having conducted other means of discovery first, plaintiff's request to depose [the apex executive] was made without a solid basis for believing [the apex executive] had some *unique* and personal knowledge related to these issues which makes his

deposition more than marginally relevant and enough to outweigh the burden."). Moreover, while Plaintiff's Consolidated Response asserts that he offered alternative means of discovery in the form of a 30(b)(6) deponent who would answer to the topics identified in Mr. Hornbuckle's subpoena (ECF No. 117 at 19), Plaintiff fails to mention that this offer was withdrawn five days later (ECF No. 99-10 at 3).[5]

Given what is presented to the Court, the Court finds Plaintiff's request for an apex deposition is unwarranted. MGM Grand's Motion for Protective Order (ECF No. 99) is granted. Plaintiff is precluded from taking the deposition of Mr. Hornbuckle. However, if, after conducting other discovery, Plaintiff develops a detailed and specific basis to suggest that Mr. Hornbuckle has unique, relevant, personal knowledge, he may renew his request for a deposition. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, Case No. C 05-4374-MMC (JL), 2007 WL 205067, at *5 (N.D. Cal. Jan. 25, 2007) (forewarning that the movant may only renew its request to depose the apex executives after less intrusive means have proven inadequate and not simply by scheduling depositions of lower-level employees and taking them "half-hearted[ly]").

Regarding the Motion to Quash Subpoena, while Mr. Hornbuckle is not a named party in this matter, he is the CEO of MGM Grand's parent corporation and the deposition could clearly have been arranged, if appropriate, without requiring attempted service on him personally or at his home. Thus, MGM Grand's Motion to Quash (ECF No. 100) is also granted.

C.    The Extension of Discovery.

The Court has broad discretion to control discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). As stated above, in late August the parties notified the Court of agreement to proceed with certain written and oral discovery. ECF No. 134. A further extension of discovery may be needed to complete discovery in a reasonable but timely fashion. The parties must provide to the Court an update on what discovery has been completed, what is agreed upon but remains to

---

[5] Based on the tone displayed in the attached communications between the parties, the Court directs Plaintiff's counsel to review Local Rule ("LR") 1-1(c). *See also Wells v. Global Tech Industries*, Case No. 22:1-cv-02040-GMN-NJK, 2023 WL 7039963, at *6 (D. Nev. Oct. 25, 2023) ("The court expects a high degree of professionalism and civility from attorneys. There should be no difference between an attorney's professional conduct when appearing before the court and when engaged outside it, whether in discovery or any other phase of a case.") (citing LR 1-1(c)).

11

be completed, and what (if anything) remains in dispute. The Order below addresses the timeliness for this submission.

D. <u>Sanctions</u>.

Federal Rule of Civil Procedure 37 is "flexible" with respect to sanctions, and district courts have broad discretion to fashion sanctions under Rule 37 when they are appropriate. 8B Wright, Miller, Marcus, Federal Practice & Procedure: Civil § 2284 (3rd ed. 2010); *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (*per curiam*). In its discretion, the Court finds an award of attorneys' fees is not appropriate with respect to the Motions decided above. While the Court appreciates the frustration experienced by MGM Grand following what appeared to be agreement regarding how discovery would proceed—that is, when one of Plaintiff's counsel rejected a prior agreement reached by another of Plaintiff's counsel, the Court finds the subsequent ability to proceed with discovery and the absence of motion practice as that discovery has proceeded militates against the award of fees and sanctions at this time.

**IV.    ORDER**

Accordingly, and based on the foregoing, IT IS HEREBY ORDERED that MGM Grand's Motion for Protective Order (ECF No. 99) and Motion to Quash (ECF No. 100) are GRANTED.

IT IS FURTHER ORDERED that MGM Grand's request for attorneys' fees and costs is DENIED.

IT IS FURHTER ORDERED that MGM Grand's Motion to Extend Discovery (ECF No. 109) is GRANTED.

IT IS FURTHER ORDERED that the parties must file a joint status report no later than **October 10, 2025** identifying what discovery has been completed since ECF No. 134 was submitted. The report must also include what written discovery, if any, is pending, the due date for responses to such written discovery (if any), what depositions have been completed, what depositions are set, but not yet completed, and the status of 30(b)(6) depositions. To the extent discovery remains to be completed, the parties must provide a proposed timeline for such completion, taking into account that prompt, but unreasonable schedules are not appreciated by the Court. The parties must propose

a close of discovery date, the due date for dispositive motions, and the due date for the proposed joint pretrial order.

IT IS FURTHER ORDERED that MGM Grand's Motion for Leave to File Supplement to Motion for Protective Order and Motion to Quash Subpoena (ECF No. 112) is DENIED as moot.

Dated this 25th day of September, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

13